UNITED STATES of America, Appellee,

v.

William TOMPKINS,
Defendant-Appellant.

No. 1209, Docket 79–1412.

United States Court of Appeals,
Second Circuit.

Argued June 5, 1980.

Decided June 20, 1980.

Richard J. Arcara, U. S. Atty., W. D. New York, Rochester, N. Y. (David Rothenberg, Asst. U. S. Atty., Rochester, N. Y., of counsel), for appellee.

Phylis Skloot Bamberger, New York City (The Legal Aid Soc., Federal Defender Services Unit, of counsel), for defendant-appellant.

Before KAUFMAN, Chief Judge, TIMBERS, Circuit Judge, MISHLER, District Judge.*

* Of the United States District Court for the Eastern District of New York, sitting by designation.

KAUFMAN, Chief Judge:

The right of the accused to representation by competent defense counsel is so fundamental to a fair and just trial that we need not belabor its constitutional origin. Though the nature of criminal litigation is complex, some defendants insist, perhaps unwisely, that they do not need assistance in rebutting the prosecution's claims. The law is skeptical of that choice, but recognizes the individual's right to defend himself without counsel if the decision is made intelligently and voluntarily, with full knowledge of the right to counsel and the consequences of its waiver. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In honoring such requests, however, the courts are duty-bound to examine defendants assiduously as to their knowledge and intent, ever cautious to ensure that the election is not merely the hollow incantation of a legal formula, but a purposeful, informed decision to proceed *pro se*. Because we cannot determine on the record before us whether such an inquiry and determination was ever made in the case at bar, we are constrained to remand to the district court for a hearing on the question of waiver.

I.

On October 25, 1979, William Tompkins was convicted of making a false material declaration before a United States grand jury, in violation of 18 U.S.C. § 1623. The perjury with which Tompkins was charged allegedly occurred during his testimony before a federal grand jury investigating alleged civil rights violations by officials of Monroe County, New York. Federal investigators suspected members of the County's Sheriff's Department and District Attorney's office of having coerced Thomas Wheeler, a witness in a 1975 murder prosecution against Albert DeCanzio, to give false testimony implicating DeCanzio at his trial. When Tompkins appeared before the federal grand jury investigating these

charges in 1978, he corroborated Wheeler's original testimony at the 1975 murder trial. Wheeler, however, recanted before the grand jury and admitted that his earlier testimony had been false. After other witnesses supported the recantation, the United States Attorney sought and obtained an indictment charging Tompkins with perjury.[1]

Tompkins was arraigned on the federal indictment before Judge Burke on May 14, 1979, and specifically requested the court to appoint counsel on his behalf. Four days later, on May 18, Tompkins wrote Judge Burke complaining that he had not yet been able to meet with assigned counsel. In the letter, Tompkins stated that he had expected to be confined at the Monroe County Jail following his arraignment so that he could meet and work with his assigned counsel. Instead, he noted, he was transferred to the Attica Correctional Facility and placed in "administrative protection," a form of isolation, from which he was unable to gain access to the prison's law library. Apparently convinced that his access to counsel would be impaired at Attica, and obviously anxious to begin work on his defense, Tompkins stated in his letter that he no longer wished to have counsel appointed on his behalf, but instead requested access to the prison law library to begin preparation of his defense.

Judge Burke apparently never acted on the request embodied in Tompkins's letter,[2] and on May 22, 1979, Peter J. Connelly was appointed to represent Tompkins. Without fault on Tompkins's part, however, Connelly and a second attorney appointed to represent him were successively relieved from the case because of a conflict created by their prior representation of other parties involved in the grand jury investigation. Accordingly, a third attorney, James L.

Kemp, was ultimately appointed to represent Tompkins on July 2.

Kemp attempted to meet with Tompkins in the Monroe County Jail on July 12, but Tompkins refused to leave his cell on the second floor to meet Kemp on the ground floor. After this aborted attempt at a meeting, appointed counsel did little or nothing to prepare Tompkins's defense. Kemp made no further effort to meet with Tompkins, nor did he file a single preliminary motion in the district court. Instead, he simply appeared at a pretrial hearing on September 24 and requested that he be relieved as counsel. Tompkins attempted to explain that his refusal to meet with Kemp in July was due not to a refusal on his part to accept counsel, but rather a fear that, absent special security precautions, he could not leave his cell without risking physical violence. Tompkins asserted that he feared attack by other inmates incensed at his grand jury testimony, an assertion supported in the record by his frequently expressed concern to prison officials for his personal safety. Indeed, the record reveals that Tompkins requested placement in a special "corridor" cell reserved for inmates in need of protection and had, for a time, been removed from state to federal custody for his personal protection.[3]

Tompkins's explanation of his reluctance to meet with Kemp sparked a critical interchange between the appellant and the district court at the September 24 hearing. After listening to Tompkins's story, Judge Burke stated to the appellant, "You don't want anybody to represent you, do you?" Tompkins attempted to explain why he did not want Kemp as his attorney, but the court insisted on learning whether Tompkins desired any assistance by counsel. Tompkins referred the court to his May

---

1. Tompkins had previously been convicted in state court of robbery in the first degree and was then serving a sentence of seven and one-half to fifteen years' imprisonment.

2. At a pretrial hearing on September 24, 1979, Judge Burke informed Tompkins that he never read the May 18th letter. In any event, sometime after Tompkins wrote the May 18th letter,

he was transferred from Attica to the Monroe County Jail.

3. Prison employees and attorneys called by Tompkins as defense witnesses at this perjury trial testified that they were aware of the appellant's fear of poisoning or assault by other inmates, and that he had therefore been placed in protective custody since 1977.

14th request for counsel, and attempted to explain again that his refusal to meet with Kemp in July was not intended as a refusal to cooperate:

> It is not a matter of me refusing to see Mr. Kemp. Mr. Kemp couldn't make arrangements to get me down off the second floor of the jail to the first floor of the jail with protection and security which I should have surrounding my own particular case . . . . Mr. Kemp made no attempt whatsoever with the jail to make arrangements.

The trial judge did not pursue that issue, but instead continued to inquire whether Tompkins wanted an attorney appointed to represent him. Thereupon Tompkins requested "standby counsel only." When Judge Burke denied that request without explanation, Tompkins stated that he would defend himself. At that point the court stated, "All right, I will let him defend himself, but I want the record to show what has happened here this morning. He doesn't want counsel assigned."

Perhaps cognizant of the ambiguous record being created, the Assistant United States Attorney immediately pointed out to Tompkins that "any attempts to prepare your defense will be handicapped by the fact that you will be incarcerated . . ." Tompkins indicated his awareness of the difficulties involved, then unsuccessfully sought to discuss with Judge Burke his May 18th request for special access to legal materials while incarcerated. Two days later, on September 26, Judge Burke signed an order relieving Kemp as Tompkins's attorney, stating that both the defendant and his attorney had requested that Kemp "be relieved and *a new attorney appointed.*" (emphasis added)

At the commencement of trial on October 23, Tompkins promptly objected to the district court's failure to appoint counsel as a violation of the September 26 order. Tompkins's objection was overruled and the trial proceeded. Tompkins conducted a vigorous defense, cross-examining the Government's witnesses and calling ten of his own. Nonetheless, the jury returned a verdict of guilty on one count of perjury and on October 26, 1979, Judge Burke sentenced Tompkins to 6 months and one day imprisonment, to be served consecutively with his state sentence. This appeal followed.

## II.

While the Sixth Amendment secures to each person accused of crime the right to counsel, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), criminal defendants also enjoy the inverse right to waive the assistance of counsel if they intelligently and voluntarily decide to conduct their own defense, *Farretta, supra.* Discerning the line between permissible and impermissible waivers of counsel can be a difficult experience for trial courts, one requiring not only an intricate assessment of the defendant's intent, knowledge, and capacity, but a strong measure of patience as well. Moreover, although the right to demand counsel and the right to waive representation both share a constitutional footing, they do not stand in perfect equipoise. Aware of the complexities of the criminal law, courts are wary of those who insist on foregoing their right to competent representation in favor of a personal defense.

Consequently, before a judge may honor a defendant's decision to represent himself, he must ascertain whether the accused has knowingly and intelligently elected to relinquish the benefits of appointed counsel. *Farretta, supra,* 442 U.S. at 835, 95 S.Ct. at 2541. This requires an examination of the "particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused," to determine whether a voluntary and intelligent decision to proceed *pro se* has been made. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). *See also Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948); *United States ex rel. Martinez v. Thomas,* 526 F.2d 750, 754 n.6 (2d Cir. 1975). But regardless of the voluntariness or intelligence of a purported decision to conduct one's own defense, there can be no waiver of the right to counsel absent a purposeful

choice reflecting an unequivocal intent to forego the assistance of counsel. Accordingly, before we may uphold appellant's conviction, we must satisfy ourselves that he made a conscious decision to foresake his right to counsel "with eyes open." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942).

On the record before us, we find scant evidence that Tompkins ever intended to waive his right to counsel. On three separate occasions—at his arraignment on May 14, 1979, at his pretrial hearing on September 24, and at the commencement of his trial on October 23—Tompkins expressly demanded appointment of counsel. His expectation that counsel would be appointed was reinforced by the succession of attorneys appointed to handle his case throughout the summer. And, though Tompkins agreed to proceed *pro se* at the September 24 hearing, his decision appears to have been spurred by Judge Burke's insistent questioning.[4] Indeed, in view of this pretrial exchange between the court and the appellant, it is difficult to believe that Tompkins's decision reflected an unequivocal intent to waive the right to counsel. A more sober examination of the appellant might have revealed that Tompkins did not wish to forego the assistance of an attorney, but was simply acting out of frustration and fear. Moreover, when we consider the September 26 order contemplating appointment of new counsel, and Tompkins's request for counsel at the outset of his trial, we cannot conclude that an effective waiver was made.

■ It is precisely because of the ambiguities that commonly accompany purported waivers of counsel that we have generally required a "recorded colloquy" between the defendant and the court, one in which the accused is informed of his right to an attorney, his right to self-representation, and the decided advantages of competent legal representation. *United States v. Plattner*, 330 F.2d 271, 276 (2d Cir. 1964). The requirement of such a "full and calm discussion," *United States v. Spencer*, 439 F.2d 1047, 1050 (2d Cir. 1971), is not absolute, however. If the defendant has willfully waived his right to counsel, or purposefully manipulated the proceedings to create a confusing record for appeal, the failure explicitly to inform the accused of the consequences of proceeding without an attorney does not require reversal of his conviction. *United States ex rel. Konigsberg v. Vincent*, 526 F.2d 131, 134 (2d Cir. 1975), *cert. denied*, 426 U.S. 937, 96 S.Ct. 2652, 49 L.Ed.2d 388 (1976); *United States v. Rosenthal*, 470 F.2d 837, 844–45 (2d Cir. 1972), *cert. denied*, 412 U.S. 909, 93 S.Ct. 2298, 36 L.Ed.2d 975 (1973). But the facts before us simply do not reveal a deliberate plot to manipulate the court by alternately requesting, then waiving counsel. Tompkins requested assistance of counsel at every formal proceeding in which he appeared and only expressed a willingness to appear *pro se* when it became clear to him that Judge Burke would not appoint standby counsel to assist him. In addition, the circumstances surrounding Tompkins's failure to meet with Kemp in the Monroe County Jail indicate that Tompkins was afraid to talk with him in prison, not that he was consciously scheming to create a ground for reversal.

Although the record does not convince us that Tompkins unequivocally waived his right to counsel, we are reluctant to reverse. At oral argument, the Government raised an important question concerning Tompkins's past experience in representing himself in criminal proceedings. Since that information may shed new light on Tompkins's behavior during the instant prosecu-

---

4. Indeed, even if there were an unambiguous expression of intent to proceed *pro se* by Tompkins at the September 24 hearing, Judge Burke's leading questions during the proceeding would raise grave doubts about the voluntariness of the appellant's election. *See Cordoba. v. Harris*, 473 F.Supp. 632 (S.D.N.Y.1979).

Furthermore, since Tompkins's refusal to meet with Kemp in the Monroe County Jail was motivated by fear, whether real or imagined, we would be reluctant to conclude that his obstinance evidenced a voluntary waiver of counsel. *See Moore v. Michigan*, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957).

tion, we remand this case to the district court for the limited purpose of determining whether Tompkins unequivocally elected to waive his right to counsel, or simply attempted to manipulate the court to create a basis for reversal. We recognize that a direct criminal appeal is rarely remanded to the trial court for additional fact-finding. Nonetheless, where, as here, the record is silent on so crucial a question of fact as the intent to waive counsel, no other disposition is possible. *See, e. g., United States v. Moten*, 582 F.2d 654, 667 (2d Cir. 1978); *United States v. Hilton*, 521 F.2d 164, 167–68 (2d Cir. 1975), *cert. denied*, 425 U.S. 939, 96 S.Ct. 1674, 48 L.Ed.2d 181 (1976).[5] Moreover, we emphasize that the purpose of our remand is not to obtain a clearer articulation of the district court's ruling on the voluntariness or intelligence of Tompkins's actions, but to order an evidentiary hearing concerning the appellant's intent to waive counsel prior to trial. Given the important question at issue, we are confident the district court proceeding will not be a "formalistic and meaningless imprimatur." *United States v. Mitchell*, 392 F.2d 214, 218 (2d Cir. 1968) (Kaufman, J., concurring).

The case is remanded to the district court for an evidentiary hearing consistent with this opinion. This Court retains jurisdiction of the appeal.[6]

**5.** In *United States v. Aulet*, 618 F.2d 182 (2d Cir. 1980), we noted the desirability of permitting a district judge to hold an evidentiary hearing to develop a full factual record on remand rather than on collateral review. *Aulet*, of course, concerned ineffective assistance of counsel, not waiver of the right to counsel.

**6.** *See United States v. Hilton*, 521 F.2d 164, 168 (2d Cir. 1975), *cert. denied*, 425 U.S. 939, 96 S.Ct. 1674, 48 L.Ed.2d 181 (1976).