UNITED STATES of America, Appellee,

v.

Takeo MATSUSHITA, a/k/a "Scott Cunningham," Defendant-Appellant.

No. 725, Docket 85–1390.

United States Court of Appeals,
Second Circuit.

Argued Jan. 28, 1986.

Decided June 24, 1986.

Monroe H. Freedman, Hempstead, N.Y. (Myron Beldock, Beldock Levine & Hoffman, New York City, of counsel), for defendant-appellant.

Franklin H. Stone, Asst. U.S. Atty., S.D. N.Y. (Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., Kenneth Roth, Asst. U.S. Atty., of counsel), for appellee.

Before OAKES, WINTER and PRATT, Circuit Judges.

WINTER, Circuit Judge:

Takeo Matsushita appeals from convictions on two counts of possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(A) (1982), one count of carrying a firearm during commission of a felony, 18 U.S.C. § 924(c)(2) (1982), and one count of impersonating a federal officer, 18 U.S.C. § 912 (1982). He claims, *inter alia,* that the district court erred in denying motions to suppress certain post-arrest statements and physical evidence, that his right to a speedy trial was violated, and that he was deprived of his fifth and sixth amendment rights by the district court's refusal to allow him to assume his own representation late in the trial. The suppression questions involve ambiguities in the district court's findings, and we remand for clarification. We reject appellant's other claims.

## BACKGROUND

In July, 1983, the Marriott Hotel in Miami, Florida, began receiving phone calls from a person identifying himself as "Inspector Scott Cunningham" of the United States Secret Service. The caller inquired about a metal suitcase in a Marriott storage room and threatened a federal investigation unless the suitcase was turned over to him. Matsushita had checked the suitcase into the hotel's storage room in November, 1982. Hotel officials became suspicious about the "Cunningham" calls, and alerted federal authorities. The investigators discovered that the Secret Service did not employ an "Inspector Scott Cunningham." With the hotel's consent, the Secret Service recorded two subsequent calls from Cunningham. They also traced a number given by the caller to a New York City answering service and discovered a message for a "James Lee" to call a Mercedes dealership. The dealership was told to notify the authorities if "James Lee" appeared.

In early August, Matsushita, who was known to the dealership as "James Lee," arrived to pick up his car, which had been dropped off for service a few days earlier. The Secret Service was phoned, and several agents descended upon the dealership. After some initial questioning in which Matsushita identified himself as "Takeo Matsushita" and denied being "James Lee," he was taken into custody and brought to Secret Service headquarters.

At headquarters, an agent familiar with the "Scott Cunningham" calls recognized Matsushita's voice as that of the person making those calls. Matsushita was placed under formal arrest on the impersonation charge and given *Miranda* warnings. He admitted to having made the "Cunningham" calls. A search of his person incident to the arrest revealed a small quantity of cocaine and several pieces of false identification. Also, a loaded handgun was found in Matsushita's car during an inventory search. Matsushita admitted possession of these items. Later, after obtaining a search warrant, agents searched Matsushita's apartment and found approximately four kilograms of high-purity cocaine, $7,800 in cash, sixteen guns, and assorted narcotics paraphernalia. They also found a recording of the "Cunningham" calls and additional pieces of false identification.

Prior to trial, Matsushita moved to suppress all statements made by him, the cocaine found on his person at the time of arrest, the gun found in his car, and the evidence seized during the search of his apartment. Judge Kram, who handled the pretrial proceedings, (Judge Cannella pre-

sided at the trial), found that Matsushita had been in custody from the time of his initial seizure at the Mercedes dealership. She thus suppressed all statements made by Matsushita before he was given his *Miranda* warnings, which took place at Secret Service headquarters following his formal arrest. She refused to suppress the items found on Matsushita's person, however, finding that they were products of a valid search incident to arrest, untainted by the inadmissible pre-*Miranda* statements. Finally, she found that the gun taken from the car and the post-*Miranda* statements were also admissible, as well as the items from his apartment.

The pretrial period was marked by long delays and by several changes in defendant's counsel. Matsushita's trial did not begin until June 10, 1985, more than twenty-two months after his arrest. During this time Matsushita was represented by at least five and perhaps six different attorneys, not including present appellate counsel. The changes of attorney caused some delay, as defendant needed time to find a new attorney each time he dismissed one. A court-ordered competency exam also delayed defendant's trial for a substantial period, as did the flurries of pretrial motions filed by defendant.

The government rested its case on June 12. The next morning, the defense sought to call a witness, but the court excluded his testimony as irrelevant. Defense counsel stated that he planned to call no more witnesses. The court discussed with counsel the requests to charge, and, after the jury had been brought back in, the defense formally rested. At that point, Matsushita sought to exercise his right to represent himself. The court denied this request as untimely. Matsushita persisted in his objections, and the dispute was adjourned to the robing room. Further discussions ensued, and the defendant returned to the courtroom under instructions not to interrupt again in the jury's presence. Shortly after the prosecutor began her summation, however, Matsushita interrupted and demanded that he be allowed to present witnesses. He was found in contempt and

quieted, and the summation continued. The jury convicted on all counts.

Matsushita now appeals. He claims, *inter alia*, that: (i) the court erred in refusing to suppress certain physical evidence, (ii) the court erred in refusing to suppress his post-*Miranda* statements; (iii) the lengthy pretrial delay violated his right to a speedy trial; and (iv) his fifth and sixth amendment rights were violated by the court's refusal of his request to testify and to present witnesses in his behalf. We address these issues seriatim.

## DISCUSSION

### 1. *Probable Cause to Arrest*

■ Matsushita argues that there was no probable cause to arrest him when he was taken into custody at the Mercedes dealership, and that all evidence garnered thereafter (voice identification, cocaine, and gun) should have been suppressed as the fruits of an illegal detention. He bases his argument primarily on *Hayes v. Florida,* 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985). In *Hayes,* police officers visited a suspect in a recent series of rapes at his home and asked him to accompany them to the station for fingerprinting. When the suspect expressed his reluctance, one officer threatened him with arrest. The suspect then agreed to accompany the officers. *Id.* at 1645. The Court rejected the argument that the police conduct was permissible under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (brief investigative stop permitted if based on reasonable suspicion). The Court held that the police may not, "without probable cause or a warrant, forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained ... for investigative purposes." 105 S.Ct. at 1647.

Matsushita claims that there was no probable cause to arrest him at the Mercedes dealership, and that the identification of his voice is therefore analogous to the fingerprints in *Hayes* and must be suppressed. Without the voice ID, he argues,

the formal arrest at Secret Service headquarters was not supported by probable cause and was thus also invalid. Because the searches of his person and his car were not incident to a lawful arrest, he claims that the fruits of those searches, *i.e.,* the cocaine and the gun, must also be suppressed. *See Wong Sun v. United States,* 371 U.S. 471 (1963) (setting out "fruit of the poison tree" doctrine).

Judge Kram's opinion is somewhat ambiguous as to whether there was probable cause for the initial seizure at the dealership. At the suppression hearing, the government took the position that Matsushita had voluntarily gone with the agents for questioning, and that the voice ID had been the piece of evidence that provided probable cause. Judge Kram found, however, that Matsushita was in custody from the time the agents first encountered him at the dealership. She suppressed only his pre-*Miranda* statements, however, because she found that, even without those statements, "probable cause ... did exist to arrest [Matsushita] at the time he was arrested on August 1, 1983." Appellant claims that this statement refers to the formal arrest at headquarters, and that Judge Kram necessarily found no probable cause for the initial seizure. The government, on the other hand, conceding that the opinion is "somewhat ambiguous," argues that it is at worst "overtly silent" as to the initial seizure. Brief of Appellee at 29. It argues that we may infer a finding of probable cause from the district court's refusal to order broader suppression, despite Matsushita's explicit requests for such relief. Alternatively, it argues that regardless of the district court opinion, the seizure was fully supported by probable cause.

We believe that the appropriate course of action is to remand to Judge Kram for clarification and more explicit findings on the issue of probable cause at the time Matsushita was detained at the dealership. Although she found that probable cause to arrest Matsushita existed "at the time he was arrested," it is not clear whether this statement refers to the formal arrest at Secret Service headquarters or to the earlier seizure. Further, even if it is read to refer only to the formal arrest, it is not at all clear that such a finding would also constitute an implicit finding of no probable cause before that time. Rather than engage in speculation about the meaning of the district court's findings, as both parties urge, or rule on the issue even if the district court did not, as the government urges, we think that Judge Kram should clarify her prior opinion and make more explicit findings on the crucial issue.

### 2. *Waiver of* Miranda *Rights*

■ Matsushita argues that he did not adequately waive his *Miranda* rights, and that the district court erred in refusing to suppress his post-*Miranda* statements. Agent Arnold Cole, who conducted the interrogation, testified at the suppression hearing that he read each of the required rights to Matsushita, and then asked him if he understood those rights. Matsushita indicated that he did. Cole then read the question, "Do you wish to talk to us now?" Matsushita did not respond to this question. Nevertheless, he answered several subsequent questions about the cocaine found on his person, the gun found in his car, and the "Cunningham" phone calls. The questioning ceased when Matsushita asked to speak to a lawyer.

Matsushita claims that these facts are insufficient to support a finding of waiver. He stresses the agent's failure to elicit an affirmative response to the final question, despite an instruction on the agent's *Miranda* warning card instructing him to secure such a response. Matsushita notes that in *Miranda* itself the Supreme Court stated that waiver will not be presumed from silence after the warnings have been given, *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966), and that the Court has since stated that when a defendant remains silent the courts in fact must presume that he has not waived his rights, *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).

Judge Kram found that statements made "after [Matsushita] had been advised of his constitutional rights" were not tainted by the pre-*Miranda* statements, and thus refused to suppress them. Her opinion does not, however, address the waiver question. The government argues that the refusal to suppress constituted an implicit finding that Matsushita knowingly and intelligently waived his rights, and that this finding is protected by the clearly erroneous rule.

■ A defendant's actions and words may constitute a waiver of *Miranda* rights, even absent an explicit statement as to waiver. *Butler*, 441 U.S. at 373, 99 S.Ct. at 1757. Further, we have in the past read a district court opinion as an implicit finding of *Miranda* waiver where the opinion in question was not explicit on the issue. *See United States v. Hall*, 724 F.2d 1055, 1060 (2d Cir.1983). In this case, however, we believe it better to have Judge Kram make an explicit finding as to whether Matsushita adequately waived his *Miranda* rights after his formal arrest at Secret Service headquarters.

### 3. *Speedy Trial*

The Speedy Trial Act, 18 U.S.C. §§ 3161–3174, requires that a defendant's trial begin within seventy days of the indictment or first appearance before a judicial officer, whichever is later. 18 U.S.C. § 3161(c)(1). The Act provides for the exclusion of certain periods from computation of the seventy day limit. *Id.* § 3161(h)(1)–(8). Defendant made several pretrial motions to dismiss for speedy trial violations, all of which were denied by Judge Kram.

The pretrial period in this case was unusually long for a single-defendant case—nearly two years. The speedy trial clock began to run on August 18, 1983, when Matsushita pled not guilty to the charges in the August 9 indictment. Although trial did not begin until June 10, 1985, none of the nearly fourteen months between April 17, 1984, and the start of trial are challenged on this appeal. This period evidently was consumed by what Judge Kram characterized as a "continuous stream" of

motions by the defendant and was excludable under Section 3161(h)(1)(F). Rather, Matsushita's speedy trial claims are focused solely on the period from August 18, 1983 to April 17, 1984, the date that a report on defendant's competency was filed with the court.

The first pretrial conference took place on September 22, 1983. Prior to that time, thirty-four non-excludable days (August 19-September 21) had passed. At that conference, counsel for defendant and for the government discussed the schedule for submitting motions. Defense counsel requested three weeks to prepare and file his motions. When the court urged him to try to get his submissions in earlier, counsel stated that a shorter deadline would be very burdensome and agreed to waive any rights under the Speedy Trial Act with regard to this period of time.

■ Judge Kram correctly held that the three weeks from September 22 to October 13 were excludable in the interests of justice under 18 U.S.C. § 3161(h)(8). The time was excluded prospectively in response to defense counsel's request for more time to prepare motions, and in response to the prosecutor's suggestion that such an exclusion would be in the interests of justice. This action complied with *United States v. Tunnessen*, 763 F.2d 74, 77–78 (2d Cir. 1985), in which we held that exclusions under Section 3161(h)(8) may not be made retroactively, and that, although the precise reasons for the granting of the continuance need not be entered on the record, the record should reflect the balancing of the proper factors at the time the exclusion was made. Further, Matsushita cannot complain about exclusion of this time in light of his counsel's explicit waiver of objection as to this period.

■ The period between October 13, 1983, and April 17, 1984, was taken up by briefing and consideration of a pretrial motion and by proceedings concerning the competency of Matsushita to stand trial. Under the Supreme Court's recent decision in *Henderson v. United States*, — U.S.

——, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986), any time consumed between the filing of a pretrial motion and the conclusion of the hearing on that motion is excludable without regard to the reasonableness of the length of time. This decision thus disapproves of *United States v. Cobb*, 697 F.2d 38 (2d Cir.1982). The rationale of *Henderson*, moreover, is that statutory provisions of the Speedy Trial Act that provide for the exclusion of time embody a reasonableness standard only when Congress has explicitly required that the period of delay be reasonable. In categorizing a number of provisions of the Speedy Trial Act that do not include such a requirement, the Court specifically mentioned Section 3161(h)(1)(A), which excludes delay resulting from proceedings concerning the competency of the defendant. 54 U.S.L.W. at 4496. Because it is thus clear that the entire period from October 13, 1983, to April 17, 1984, is excludable under either Section 3161(h)(1)(F) or Section 3161(h)(1)(A), Matsushita's Speedy Trial Act claim must be rejected.

### 4. *Fifth and Sixth Amendment Claims*

■ Finally, Matsushita claims that Judge Cannella's refusal of his request to assume his own defense deprived him of his sixth amendment right to represent himself. This request came after the defense had rested and after the judge had entertained counsel's requests to charge. His claim is based on *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), in which the Supreme Court held that a criminal defendant has a constitutional right under the sixth amendment to represent himself.

■ Matsushita argues that this right is unqualified and may be asserted at any point in the criminal proceedings. Our post-*Faretta* holdings, however, are to the contrary. In *United States v. Brown*, 744 F.2d 905, 908 (2d Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984), we stated that the right to proceed *pro se* "is unqualified only if exercised before the commencement of trial." *See also Sapienza v. Vincent*, 534 F.2d 1007,

1010 (2d Cir.1976)(reaffirming vitality of qualified privilege rule of *United States ex rel. Maldonado v. Denno*, 348 F.2d 12 (2d Cir.1965), *cert. denied*, 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966), even in light of *Faretta* ). The prejudice to the legitimate interests of the defendant must be balanced against the potential disruption of the proceedings in progress. *Sapienza*, 534 F.2d at 1010. The appropriate criteria for a trial judge to consider are the defendant's reasons for the self-representation request, the quality of counsel representing the party, and the party's prior proclivity to substitute counsel. *Id.*

Under these standards, we believe that Judge Cannella was well within his discretion in denying Matsushita's request. Matsushita was advised at length in March, 1985, about his right to proceed *pro se* and the hazards associated with a decision to exercise that right. Rather than elect to proceed *pro se* at that time, he opted to dismiss his fourth attorney and hire a fifth, a move that Judge Kram allowed with some reluctance. Of course, a party's pretrial decision to proceed with counsel does not constitute an absolute waiver of his right to represent himself. However, it is clear that a large factor in Judge Cannella's decision was Matsushita's prior propensity to substitute counsel, which had already significantly delayed the trial. Judge Cannella was in the best position to evaluate the extent to which Matsushita's objection was simply a disruptive tactic, as opposed to a legitimate request. Matsushita was on notice before the charging conference that the defense intended to rest. Nevertheless, he waited until after the jury had been brought back in and after his attorney had formally rested his case before asserting his right to represent himself. Under these circumstances, Judge Cannella had ample reason to deny the request.

■ Matsushita also claims that the court's denial of his even later request to testify and to present witnesses also deprived him of his fifth and sixth amendment rights. The request came after the prosecutor had begun her summation. To

52

some extent this claim merges with the prior one, for defense counsel had already rested and presentation of evidence apparently would have required Matsushita to assume his own defense. At the time of his request, Matsushita's self-representation motion had been denied and he was under explicit instructions not to make further outbursts in the jury's presence. Ignoring these instructions, he interrupted the government summation, claiming, "I have some witnesses," and demanded a chance to present more evidence. "Whether or not to permit the case to be reopened for further proceedings was within the discretion of the court." *United States v. Kenner,* 354 F.2d 780, 784 (2d Cir.1965), *cert. denied,* 383 U.S. 958, 86 S.Ct. 1223, 16 L.Ed.2d 301 (1966). Nothing remotely approaching an abuse of discretion occurred here.

## CONCLUSION

We have considered appellant's other claims and find them to be without merit. The case is affirmed in part and remanded for further proceedings consistent with this opinion.