Jerome WILLIAMS, Petitioner–Appellant,

v.

George BARTLETT, Respondent–Appellee,

Howard R. Relin, Monroe County District Attorney, Intervenor–Respondent–Appellee.

No. 548, Docket 94–2082.

United States Court of Appeals, Second Circuit.

Argued Nov. 22, 1994.

Decided Dec. 28, 1994.

Mark B. Gombiner and the Legal Aid Soc., Federal Defender Div., Appeals Bureau, New York, NY, for petitioner-appellant.

Loretta S. Courtney, Monroe County, Rochester, NY, Asst. Dist. Atty. (Howard R. Relin, Dist. Atty., Monroe County, of counsel), for respondent-appellee and intervenor-respondent-appellee.

Before: OAKES, JACOBS and CALABRESI, Circuit Judges.

JACOBS, Circuit Judge:

Petitioner Jerome Williams seeks a writ of habeas corpus, claiming that his Sixth

Amendment rights were violated when the New York State Supreme Court denied his application to represent himself in his trial for criminal possession of a controlled substance. The trial judge denied the application on the invalid grounds that Williams's lack of schooling and training would disserve his defense and that the proceedings, then three months away from trial, were too far advanced to allow the discharge of assigned counsel. The Appellate Division affirmed on the cognizable ground that the Petitioner was equivocal in manifesting his intent to proceed *pro se*. The Petitioner takes this appeal from a Decision and Order of the United States District Court for the Western District of New York (Larimer, J.) dismissing appellant's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the ground stated by the Appellate Division—that Williams's application to act *pro se* was not an "unequivocal request" because of Williams's prior conduct of accepting and then waiving appointed counsel—and on the further ground that Williams abandoned his request by failing to reassert his desire to act *pro se*, 842 F.Supp. 64.

We reverse the district court's decision because the Petitioner exhibited no equivocation in seeking and pursuing *pro se* status and did not waive his Sixth Amendment right through abandonment, and we remand with the instruction to order the petitioner's release unless the State, within 60 days from the date of the district court order, affords Williams a new trial.

## I. Facts and Prior Proceedings

Petitioner Jerome Williams was arrested on September 26, 1989 for selling cocaine to an undercover agent in Rochester, New York. Williams was charged with criminal possession of a controlled substance in the third degree, in violation of N.Y.Penal Law § 220.16(1), and criminal possession of a controlled substance in the seventh degree, in violation of N.Y.Penal Law § 220.03.

The Rochester Public Defender's Office was assigned to represent Williams when he was bound over for grand jury action. Williams, however, elected to represent himself before the grand jury, testified and was indicted.

On January 29, 1990, Williams appeared for arraignment before New York Supreme Court Justice John D. Doyle. Williams announced that he wished to waive his right to counsel. Williams explained: "I just don't agree with a lot of things the Public Defender's Office does, so I don't feel comfortable.... They don't want you to get out, they want you to stay in jail it seems like." Justice Doyle conducted an extensive colloquy, inquiring into Williams's educational background and legal training, warning Williams of the perils of self-representation, and strongly recommending appointment of counsel. Williams responded, "I will represent myself." At the conclusion of the arraignment proceedings, Justice Doyle directed the Public Defender's Office to send an attorney to meet with Williams and discuss the "gravity" of his decision to represent himself.

At a status conference on February 15, 1990, which Williams did not attend, Assistant Public Defender Jill Paperno informed Justice Doyle that, pursuant to the court's instructions, she had spoken with the defendant and that Williams "wishes to proceed with an attorney." Paperno was formally assigned as Williams's attorney. At three brief status conferences held on March 1, March 22 and April 3, 1990, Williams acknowledged that Paperno was his attorney.

On July 5, 1990, Justice Donald G. Purple, Jr. (sitting in for Justice Doyle) held a hearing on Paperno's evidentiary motions. Williams was present. Paperno informed the court that Williams had refused to meet with her during the preceding week and was requesting that his counsel be dismissed. Nevertheless, Justice Purple decided to conduct the evidentiary hearing first. After 18 transcript pages of argument by Paperno on evidence and probable cause, the court turned to the issue of representation. Justice Purple offered Williams a complex choice: the court could (i) grant the defendant's *pro se* request and disregard Paperno's evidentiary motions, (ii) rule on the evidentiary issues and then discharge his attorney, or (iii) rule on the evidentiary issues and

refer Williams's *pro se* request to Justice Doyle. After discussing these options with Paperno, Williams decided to "continue with counsel" for purposes of that hearing.

Williams next appeared in court on August 21, 1990, before Justice Donald J. Mark (sitting in for Justice Doyle). Through his attorney Paperno, Williams requested that he be allowed to make a motion addressed to Judge Doyle to discharge appointed counsel and proceed *pro se*. Justice Mark granted the defendant's request and adjourned the proceeding.

On September 18, 1990, Williams appeared before Justice Doyle. The sole purpose of the hearing was to address the defendant's application to dismiss his attorney and act *pro se*. Paperno informed the court that "Mr. Williams asked that I place his matter on the docket so he could request of this Court that he be allowed to proceed *pro se*." Williams reiterated what he had expressed at arraignment: he distrusted the Public Defender's Office and was uncomfortable with the representation. Williams described his prior decision to continue with counsel as follows:

> I requested to go pro se and it was my intention to go pro se at the [July 5th] hearing, also. But I didn't and I let Jill Paperno represent me at that hearing. And it's still my intention[ ] now to go pro se. Before I wanted to have an attorney, but I can't afford a private attorney. That's why I'm going pro se.

After questioning Williams once again on his educational background and legal training, Justice Doyle denied Williams's request to proceed *pro se:*

> I'm going to deny your request to go pro se. I don't think it is in your best interest to go pro se.
>
> \* \* \* \* \* \*
>
> We are too far along in these proceedings to have you represent yourself. I strongly recommend that you continue to cooperate with Miss Paperno and her efforts to represent you to the fullest extent of her abilities. You have no legal training, you have no college education, you have no law school education, you have no skills or on-the-job training. You don't know what the law is. In good conscience, Mr. Williams, I cannot allow you to represent yourself in this stage of the proceeding.

After Justice Doyle's ruling, Williams did not renew or reassert his application to represent himself.

At a motions hearing on October 18, 1990, Justice Doyle acknowledged receiving a letter dated October 10, 1990, in which Williams requested that a private attorney, David Murante, be assigned as his counsel. The court made the following statement:

> Ms. Paperno is your lawyer. If you had the ... means to retain Mr. Murante as a private attorney, I would have no problem. I caution you, Mr. Williams, I want you to cooperate with Ms. Paperno.... Were you not to cooperate with her, there is recent case law that has come down that says that you are on your own. You are on your own.... I recommend seriously you continue to cooperate with Ms. Paperno.

Justice Doyle denied Williams's request to have Mr. Murante assigned as his lawyer.

The criminal trial commenced on December 10, 1990. Williams was represented by Jill Paperno. A jury convicted Williams on both counts of the indictment and he was sentenced to 6 to 18 years imprisonment. There is no assertion (or ground to think) that Williams's lawyer failed him in any way.

In his appeal to the Appellate Division of the New York State Supreme Court, Williams argued that his Sixth Amendment right to self-representation had been violated when Justice Doyle denied his application to appear *pro se*. The Appellate Division, Fourth Department, unanimously affirmed the conviction and denied Williams's Sixth Amendment claim. Because the defendant had "repeatedly changed" his position regarding self-representation, the Appellate Division held that Williams's *pro se* request "cannot be deemed unequivocal." Such conduct, they stated, "undermines the orderly administration of justice." Williams's application for leave to appeal to the New York Court of Appeals was denied.

On April 2, 1993, Williams filed a habeas corpus petition, *pro se,* asserting his Sixth Amendment claim in the United States District Court for the Western District of New York. Judge Larimer denied Williams's petition on the ground that Williams repeatedly vacillated in his desire to act *pro se* and never renewed his application subsequent to the September 18 hearing. Judge Larimer further admonished that "[a] court should not have to guess, at its peril, when an indigent defendant *really* wants to proceed *pro se* and when he is just using the request as a tactic to change lawyers or disrupt proceedings." Judge Larimer accordingly ruled that Williams failed to make an "unequivocal request" to proceed *pro se,* and denied the petition.

## II. Discussion

The habeas petition attacks Justice Doyle's ruling on September 18, 1990, denying Williams's motion to discharge counsel and act *pro se.* At that hearing, the grounds expressed by Justice Doyle were principally the defendant's lack of legal training, college education, and skills or on-the-job training. Individually or cumulatively, these deficits furnish no basis to refuse a knowing, voluntary and unequivocal waiver of one's right to counsel. *See Johnstone v. Kelly,* 808 F.2d 214, 216 (2d Cir.1986), *cert. denied,* 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987). In addition, Justice Doyle cited the advanced stage of the proceedings as a ground for denial, which was dubious given that Williams's case was months away from trial.

The Appellate Division, however, upheld the ruling on the cognizable ground that Williams failed to make an "unequivocal request" to proceed *pro se.* After conducting an independent review of the record, the district court denied Williams's habeas petition on the same ground and further emphasized that Williams had failed to reassert his desire to act *pro se* after the September 18th ruling. Consequently, we will only address the matter of Williams's supposed equivocation and possible abandonment of his Sixth Amendment right.

We review the denial of a § 2254 habeas corpus petition *de novo. Quinn v. Neal,* 998 F.2d 526, 528 (7th Cir.1993); *Aponte v. Gomez,* 993 F.2d 705, 707 (9th Cir.1993); *United States ex rel. Rutherford v. Deegan,* 406 F.2d 217, 220 (2d Cir.), *cert. denied,* 395 U.S. 983, 89 S.Ct. 2145, 23 L.Ed.2d 771 (1969). However, state court factual determinations are entitled to a presumption of correctness if they are "fairly supported by the record." 28 U.S.C. § 2254(d)(8). We believe the record does not support the conclusion that Williams's request to act *pro se* on September 18, 1990 was equivocal, or that Williams waived his right to proceed *pro se* through abandonment thereafter.

Under the Sixth Amendment, the accused is guaranteed the right of electing to represent himself. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A criminal defendant may proceed *pro se* if he "knowingly, voluntarily, and unequivocally" waives his right to appointed counsel. *Johnstone,* 808 F.2d at 216. A state court's violation of a defendant's Sixth Amendment right to self-representation requires automatic reversal of a criminal conviction and is not subject to a harmless error analysis. *Id.* at 218.

A criminal defendant must make a timely and unequivocal request to proceed *pro se* in order to ensure the orderly administration of justice and prevent the disruption of both the pre-trial proceedings and a criminal trial. *Sapienza v. Vincent,* 534 F.2d 1007, 1010 (2d Cir.1976). Assuming, however, that a defendant's request to proceed *pro se* is informed, voluntary and unequivocal, "[t]he right of a defendant in a criminal case to act as his own lawyer is *unqualified* if invoked prior to the start of the trial." *United States ex rel. Maldonado v. Denno,* 348 F.2d 12, 15 (2d Cir.1965) (emphasis added), *cert. denied,* 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966). Distinct considerations bear upon requests made after a trial has begun.[1] Subsequent cases have affirmed the

---

1. After trial has begun, a trial court faced with such an application must balance the legitimate

interests of the defendant in self-representation against the potential disruption of the proceed-

entitlement to *pro se* status first outlined in *Denno*. *See, e.g., United States v. Matsushita*, 794 F.2d 46, 51 (2d Cir.1986); *United States v. Brown*, 744 F.2d 905, 908 (2d Cir.), *cert. denied*, 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984); *Sapienza*, 534 F.2d at 1010.

 The right to self-representation does not attach until it is asserted "clearly and unequivocally." *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541. In order to waive one's right to counsel there must be an initial request to proceed *pro se*. Williams's initial request was at his arraignment. Once asserted, however, the right to self-representation may be waived through conduct indicating that one is vacillating on the issue or has abandoned one's request altogether. *See, e.g., Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir.1982) (waiver where, after initial request to proceed *pro se*, defendant asked counsel to continue representation and then, once again, requested to proceed *pro se* on the third day of trial). It is equally true, however, that a defendant's "pre-trial decision to proceed with counsel does not constitute an absolute waiver of his right to represent himself." *Matsushita*, 794 F.2d at 51. The principal focus of a trial judge's colloquy should be to determine whether the accused has "knowingly and intelligently" elected to relinquish the benefits of appointed counsel. *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541. Where a *pro se* defendant lacks the ability to defend himself adequately or vacillates in his resolve to continue without representation, the judge can appoint stand-by counsel to assist the defendant in representing himself. *See Faretta*, 422 U.S. at 834–35 n. 46, 95 S.Ct. at 2540–41 n. 46; *McKaskle v. Wiggins*, 465 U.S. 168, 183–85, 104 S.Ct. 944, 953–55, 79 L.Ed.2d 122 (1984); *Johnstone*, 808 F.2d at 216–17. The entire procedure requires "not only an intricate assessment of the defendant's intent, knowledge, and capacity, but a strong measure of patience as well." *United States v. Tompkins*, 623 F.2d 824, 827 (2d Cir.1980).

 To prevail on his petition, therefore, Williams must demonstrate that his September 18, 1990 application to discharge counsel and act *pro se* was clear and unequivocal and that he did not thereafter waive his right to self-representation by abandonment. Equivocation, which sometimes refers only to speech, is broader in the context of the Sixth Amendment, and takes into account conduct as well as other expressions of intent.

The record is clear that on more than one occasion Williams clearly and unambiguously asserted his desire to represent himself at his criminal trial. He elected to forgo counsel before the grand jury. At his arraignment, Williams stated, "I will represent myself." Later, Williams asked that his case be placed on Justice Doyle's docket so he could renew his application to act *pro se*. As represented by Williams's counsel at the time, the sole purpose of the September 18, 1990 hearing was to address Williams's application to discharge his appointed counsel and proceed *pro se*. At the hearing, Williams declared:

> "it's ... my intention[ ] now to go pro se. Before I wanted to have an attorney, but I can't afford a private attorney. That's why I'm going pro se."

On each of these occasions, Williams's statements show a "purposeful choice reflecting an unequivocal intent to forego the assistance of counsel." *Tompkins*, 623 F.2d at 827–28. To the extent one may view these statements as conditional, we have previously held that a defendant is not deemed to have equivocated in his desire for self-representation merely because he expresses that view in the alternative, simultaneously requests the appointment of new counsel, or uses it as a threat to obtain private counsel. *See Johnstone*, 808 F.2d at 216 & n. 2.

The purpose of requiring that a criminal defendant make an "unequivocal" request to waive counsel is twofold. First, unless the request is unambiguous and unequivocal, a convicted defendant could have a colorable Sixth Amendment appeal regardless of how the trial judge rules: if his request is denied,

ings already in progress. *United States v. Matsushita*, 794 F.2d 46, 51 (2d Cir.1986). In exercising this discretion, the appropriate criteria for a trial judge to consider are the defendant's rea-

sons for the self-representation request, the quality of counsel representing the party, and the party's prior proclivity to substitute counsel. *Sapienza*, 534 F.2d at 1010.

he will assert the denial of his right to self-representation; if it is granted, he will assert the denial of his right to counsel. *See Hamilton v. Groose,* 28 F.3d 859, 862–63 (8th Cir.1994). Second, the requirement of an unambiguous and unequivocal request inhibits any "deliberate plot to manipulate the court by alternatively requesting, then waiving counsel." *Tompkins,* 623 F.2d at 828.

Williams's conduct prior to the September 18 hearing did not amount to vacillation. When Williams announced his resolve to proceed *pro se* at arraignment, the court issued sound warnings and appropriate advice, and dispatched a lawyer to advise Williams of the potential perils of self-representation. In the ensuing eight months, Williams was willing to appear through counsel at a series of conferences and hearings. But that alone cannot render his subsequent September 18 application capricious. Appearing *pro se* is, as the trial judge warned, a momentous decision. The fact that Williams tried having a lawyer merely confirms that his later willingness to forgo counsel was an informed decision. Of course, when a defendant changes his mind after trial begins, or does so repeatedly at any stage, a court may find that the conduct is manipulative or abusive in some other way. If so, the conduct can be considered vacillation, and a trial judge may find the request equivocal. The fact that Williams tried a lawyer at the urging of the court reflects both sound advice on the court's part and wise deference to that advice on the part of the defendant; it does not signify waiver or suggest tactical abuse of the system. Justice Doyle, who was closer to the unfolding situation than any other judge who has considered the matter, made no finding that Williams was manipulating events; to the contrary, his September 18 ruling was based on solicitude for Williams and a need to protect him from being overwhelmed.

Williams's conduct at the July 5 evidentiary hearing furnishes no support for a finding of vacillation or waiver. Justice Purple offered to discharge Williams's counsel, and (at Williams's option) either to disregard the evidentiary motions or to rule on them. Although Williams passed up that opportunity, Justice Purple had also offered Williams the third option of resolving the motions and deferring the motion to act *pro se* so that it could be considered by Justice Doyle. It is unclear why Williams did not discharge his counsel when Justice Purple offered to do so; but it is clear that Justice Purple offered a range of options, and that Williams accepted an option that preserved his opportunity to seek *pro se* status before Justice Doyle. No waiver or manipulative intent can be imputed to Williams under these circumstances; he may simply have been anxious to hear the rulings on potentially critical motions and discuss the results with the lawyer who had just argued on his behalf.

In short, Justice Doyle's September 18 ruling cannot be supported by a finding of equivocation or vacillation on Williams's part, because any such finding must rest solely on Williams's acceptance (with misgivings) of a lawyer he unambiguously moved to discharge at arraignment. Furthermore, Williams's September 18 application was substantially in advance of trial, and did not present any incremental delay, expense to anyone, or evidence of abuse.

Respondents emphasize that Williams failed to reassert his desire to act *pro se* after the September 18 hearing, and argue that this effectively waived his Sixth Amendment right to self-representation through abandonment. We disagree. Williams's timely and unequivocal request was denied on September 18 and the door was closed. The court's ruling was categorical, and expressly relied on the advanced stage of proceedings and the defendant's lack of education—obstacles that were not going to be removed before trial. The defendant's acquiescence thereafter cannot be read to signify waiver of a constitutionally protected right, *see Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (stating that "we do not presume acquiescence in the loss of fundamental rights." (internal quotes omitted)); even a lawyer could not be faulted for failing to renew a motion under those circumstances.

On October 18, Williams named another lawyer, and asked that the court appoint him in place of Paperno. Again, we think that this application does not evidence vacillation. The court had unconditionally ruled that Williams be represented; Williams's desire to exchange one mandatory counsel for an-

other (of his choosing) does not signify that he was abandoning his Sixth Amendment right to have none.[2] In short, the facts do not reveal a "deliberate plot [by the defendant] to manipulate the court by alternatively requesting, then waiving counsel." *Tompkins*, 623 F.2d at 828.

We find that the record in this case does not support the district court's finding that Williams failed to make an "unequivocal request" to act *pro se*, or its finding of waiver. We therefore conclude that the order denying Williams's motion to act *pro se* deprived Williams of his constitutional right to conduct his own defense.

### Conclusion

For these reasons, we reverse the district court's order denying the writ of habeas corpus, and we remand with the instruction to order Petitioner's release unless the State promptly affords him a new trial, i.e., within 60 days of the district court's order. Reversed and remanded. The mandate shall issue forthwith.

---

**2.** Appellees argue that *pro se* status was in fact offered when Justice Doyle stated at the October 18 hearing: "Were you not to cooperate with [your lawyer], there is recent case law that has come down that says that you are on your own." We do not construe this ambiguous language as an offer of *pro se* status. Furthermore, since Williams was required to act through counsel, the court cannot set, as a condition to a defendant's Sixth Amendment right to appear *pro se*, that a defendant fail to cooperate with the person who is appearing in court on his behalf.