10-0243-cr (L)
*USA v. Campbell, Shaw*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 16ᵗʰ day of May, two thousand twelve.

PRESENT: JOSEPH M. MCLAUGHLIN,
RICHARD C. WESLEY,
*Circuit Judges*,
J. GARVAN MURTHA,
*District Judge*.*

_____

UNITED STATES OF AMERICA,

*Appellee*,

-v.-                                   10-0243-cr (Lead)
                                       10-0246-cr (Con)

MARLON CAMPBELL, AKA ROOSTER, BRANDON SHAW

*Defendants-Appellants*.

_____

* Judge J. Garvan Murtha, of the United States District Court for the District of Vermont, sitting by designation.

FOR APPELLANTS:     GERALD J. DI CHIARA, Law Offices of Gerald Di Chiara, New York, NY, *for Defendant-Appellant Brandon Shaw*.

JANEANNE MURRAY, Murray Law LLC, New York, NY, *for Defendant-Appellant Marlon Campbell.*

FOR APPELLEE:     LAURIE A. KORENBAUM, Assistant United States Attorney (Jesse M. Furman, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY.

Appeal from the United States District Court for the Southern District of New York (McMahon, *J.*)

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the United States District Court for the Southern District of New York be **AFFIRMED.**

Defendants-Appellants Marlon Campbell ("Campbell") and Brandon Shaw ("Shaw") appeal from judgments of conviction entered by the United States District Court for the Southern District of New York (McMahon, *J.*), following a jury trial in which defendants were found guilty of: (1) conspiracy to possess with the intent to distribute a controlled substance (1,000 kilograms or more of mixtures and substances containing a detectable amount of marijuana) in violation of 21 U.S.C. §§ 841(b)(1)(a) and 846; (2) intentional murder of Marcus Bogle while engaged in a drug conspiracy, and aiding

2

and abetting the same, in violation of 21 U.S.C. § 848(e) and 18 U.S.C. § 2; (3) use, possession, and discharge of a firearm in furtherance of Counts One and Two, and aiding and abetting the same, in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and (4) use, carrying, and possession of a firearm used to cause Bogle's death, and aiding and abetting the same, in violation of 18 U.S.C. § 924(j).

On appeal defendants argue that: (1) the district court erred in admitting other-act evidence pursuant to Federal Rule of Evidence 404(b); (2) the district court's jury instructions regarding drug quantity were improper; and (3) that the Government's rebuttal summation constituted prosecutorial misconduct that deprived defendants of the right to a fair trial. Additionally, Shaw raises an ineffective assistance of counsel claim and Campbell argues that he was denied his constitutional right to testify on his own behalf.

We have reviewed defendants' arguments that the court erroneously admitted other-act evidence and failed to give appropriate limiting instructions. We find these claims without merit. The district court appropriately exercised its discretion to admit evidence of defendants' prior crimes with Tajah, evidence of Campbell's marijuana possession

3

after Bogle's murder, and evidence that Shaw received marijuana from Harrison before the Bogle murder pursuant to our circuit's inclusionary approach to Rule 404(b).  *See United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004).  This evidence was properly admitted to "help explain how the illegal relationship between participants in the crime developed, . . . to explain the mutual trust that existed between coconspirators," *United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 1993), or because "it arose out of the same transaction or series of transactions as the charged offense, [was] inextricably intertwined with the evidence regarding the charged offense, or [was] necessary to complete the story of the crime on trial," *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000).  Furthermore, the court's limiting instructions with regard to this evidence were appropriate and sufficient to cure any prejudice that may have otherwise resulted from its admission.  *See LaFlam*, 369 F.3d at 157.

The court's instructions regarding drug quantity were not plainly erroneous.  When we review jury instructions we must view "the instructions as a whole to see if the entire charge delivered a correct interpretation of the law." *United States v. Bala*, 236 F.3d 87, 94-95 (2d Cir. 2000)

4

(internal quotation marks omitted).  Here, the court's instructions appropriately informed the jury that drug quantity was not an element of Count One, *see* 21 U.S.C. §§ 841(a)(1), 846, and that the jury had to determine drug quantity unanimously and beyond a reasonable doubt for purposes of the special interrogatory, *see United States v. Gonzalez*, 420 F.3d 111, 125 (2d Cir. 2005).  The court also properly instructed the jury that it had to find drug-quantity scienter unanimously and beyond a reasonable doubt. *See United States v. Martinez*, 987 F.2d 920, 926 (2d Cir. 1993).  The jury instructions were clear and correct.

Defendants also argue that the prosecutor engaged in egregious misconduct during rebuttal summation by denigrating the defense team, shifting the burden of proof, referring to facts not in evidence, and vouching for the government's witnesses.  None of the alleged conduct to which defendants point was "so severe and significant as to result in the denial of [the defendant's] right to a fair trial," *United States v. Locascio*, 6 F.3d 924, 945 (2d Cir. 1993), especially in light of the court's effective curative instruction and its general instruction that counsel's arguments were not evidence, *United States v. Newton*, 369 F.3d 659, 681 (2d Cir. 2004).

5

The record also fails to support Shaw's position that his counsel's performance fell below an "objective standard of reasonableness" under "prevailing professional norms." *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Although we generally resolve ineffective assistance claims on habeas review, Shaw has new counsel on appeal and the record is sufficient for us to decide his ineffectiveness claim now. *See United States v. Yauri*, 559 F.3d 130, 133 (2d Cir. 2009); *United States v. Khedr*, 343 F.3d 96, 99-100 (2d Cir. 2003).

Shaw presents four arguments in support of his ineffective assistance claim. He argues that counsel was ineffective because he: (1) failed to object to a question/answer in Donna Deberry's testimony; (2) failed to read the government's letter regarding a typographical error in the transcript before relying on the transcript during summation; (3) failed to investigate and present a defense based on Shaw's proffer statement; and (4) failed to move for severance. None of these alleged errors by Shaw's counsel satisfy the requirements for an ineffective assistance of counsel claim.

Shaw's first contention, that counsel was ineffective because he failed to object to a set of questions and

6

answers in Donna Deberry's direct, is wholly unpersuasive. The questioning dealt with whether Bogle knew more than one "Timmy" and both the questions and answers were clearly based on Deberry's personal knowledge. This line of questioning was not, therefore, objectionable under Federal Rule of Evidence 602 and counsel's failure to object was not objectively unreasonable.

Shaw's second contention is that counsel provided ineffective assistance of counsel when he relied on a transcript containing a typographical error after receiving, but not reviewing, the government's letter pointing out and correcting the error. As the district court noted, this mistake was not entirely the fault of Shaw's counsel. Therefore, we doubt that this alleged error satisfies even the first prong of *Strickland*. 466 U.S. at 687-88. But, even if counsel's performance was objectively unreasonable, Shaw cannot satisfy the prejudice prong of *Strickland* because the court gave an effective curative instruction and allowed Shaw's counsel to reopen his summation. During the second summation, Shaw's counsel was able to make much the same argument he had before the error was realized. As a result, Shaw suffered no prejudice from any error counsel made in failing to recognize the typographical error before summation.

Shaw also argues that counsel's performance was deficient and prejudicial because counsel failed to fully investigate Shaw's proffer statements before deciding not to pursue a defense based on those statements. During a proffer meeting with the Government—during which Shaw was represented by an attorney other than the one representing him at trial or on appeal—Shaw claimed that he shot Campbell's hand on purpose to prevent Campbell from shooting Bogle. Essentially, Shaw claimed the he shot toward Bogle's car to save Bogle's life rather than to kill him.

Shaw acknowledges that a strategic decision "made after thorough investigation of law and facts relevant to plausible options [is] virtually unchallengeable." *Strickland*, 466 U.S. at 690. But, he claims that his counsel's decision not to present this alternative defense was the result of "ignorance, inattention or ineptitude" because his counsel failed to call the lawyer who represented Shaw during the proffer meeting and explore her recollections and notes from the meeting. *See Cox v. Donnelly*, 387 F.3d 193, 201 (2d Cir. 2004). This contention is unpersuasive.

The record clearly demonstrates that Shaw's counsel was aware that Shaw wished to present this "I shot Campbell's

8

hand to save, not kill Bogle" defense.  But Shaw's counsel made a strategic, "virtually unchallengeable" decision not to present it to avoid allowing the government to present damning statements from Shaw's proffer session, most of which fully corroborated the government's case.  That the decision was a well-considered strategic one is even more evident from how fanciful this purported defense actually is:  Shaw wanted his counsel to argue that as the *driver* of the car from which people were shooting, Shaw tried to *save* *Bogle's* life by shooting Campbell's hand, when in fact, he could more easily have done that by driving away.  Not presenting such a defense was neither objectively unreasonable nor the result of "ignorance, inattention or ineptitude."

Finally, Shaw contends that his counsel provided ineffective assistance of counsel by failing to move for severance.  Defendants have a difficult burden when arguing that joinder would result in an unfair trial, *United States v. Casamento*, 887 F.2d 1141, 1149-50 (2d Cir. 1989), especially where, as here, "the crime charged involves a common scheme or plan" among the defendants, *United States v. Girard*, 601 F.2d 69, 72 (2d Cir. 1979).  Shaw would not have been able to meet this burden at trial and certainly

9

fails to meet it after a trial during which the court repeatedly gave appropriate limiting instructions to eliminate any spillover prejudice. *See, e.g.*, *United States v. Williams*, 936 F.2d 698, 700-01 (2d Cir. 1991). And because Shaw's proffer-statement-based defense was never raised at trial, it does not qualify as a basis for severance. Shaw's counsel's decision not to seek severance was not, therefore, objectively unreasonable.

Indeed, the record as a whole more than supports the district court's conclusion that Shaw received "competent, able and indisputably effective assistance of counsel" throughout the trial.

Finally, we address Campbell's contention that the court improperly denied him the right to testify on his own behalf. The right to testify is not without limitation and the decision whether to reopen proceedings to allow such testimony once the defense has rested is within the sound discretion of the district court. *See Rock v. Arkansas*, 483 U.S. 44, 55-56 (1987); United *States v. Matsushita*, 794 F.2d 46, 51-52 (2d Cir. 1986). The district court did not abuse that discretion in denying Campbell the opportunity to take the stand when the request to do so occurred during the government's rebuttal summation. This case is entirely

10

unlike *United States v. Walker*, 772 F.2d 1172 (5th Cir. 1985), on which Campbell relies.

In *Walker*, the Fifth Circuit held that it was an abuse of discretion for the district court not to reopen proceedings to allow defendant to testify because the defendant's intention to take the stand was evident throughout the trial. Defense counsel told the jury during opening statements that defendant would testify and defendant indicated, before the defense rested, that he wanted to testify but was not yet emotionally prepared to do so. Subsequently, and *before* summations began, the defendant in *Walker* unambiguously requested that the court reopen proceedings so that he could testify. Here, however, unlike in *Walker,* neither Campbell nor his attorney ever indicated that Campbell intended to or wanted to testify. Indeed, the first time Campbell made any mention of wanting to testify was *during* the government's rebuttal summation when the court had to dismiss the jury due to a disruptive outburst by Campbell in open court. It is clear from the record that Campbell had, throughout the trial, intended to follow his counsel's advice that he not take the stand. Based on the timing and method of his supposed request to testify, the court's denial of any such request was not an abuse of discretion. *See Matsushita*, 794 F.2d at 51-52.

11

For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk