**James D. WILSON, Petitioner–Appellant,**

v.

**Hans WALKER, Superintendent, Auburn Correctional Facility, Respondent–Appellee.**

**Docket No. 98–2657**

United States Court of Appeals, Second Circuit.

Argued: Feb. 3, 2000

Decided: Feb. 17, 2000

34

Susan D. Fitzpatrick, Ossining, NY, for Petitioner–Appellant.

Wendy Evans Lehman, Chief of Appeals, Monroe County District Attorney's Office (Howard R. Relin, District Attorney of Monroe County, of counsel), Rochester, NY, for Respondent–Appellee.

Before: CABRANES, OAKES, and SACK, Circuit Judges.

PER CURIAM.

This appeal requires us to clarify when a criminal defendant may be deemed to have waived a previously asserted right to represent himself at trial. Petitioner James D. Wilson appeals from a judgment of the United States District Court for the Western District of New York (Michael A. Telesca, *Judge*), denying his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the ground that he had waived his Sixth Amendment right to self-representation through abandonment. We agree with the District Court that Wilson waived his Sixth Amendment right, and we therefore affirm the judgment of the District Court.

## I.

On February 8, 1994, Wilson and another man, with guns drawn and faces covered, entered a store in Rochester, New York, grabbed the cashier around the neck, and ordered everyone in the store to lie on the floor. The two men then directed everyone but the store manager into a walk-in cooler, which they locked, and ordered the manager to take money and food stamps out of the store's safe. Wilson and his accomplice fled the store with about $13,000 worth of items, but they were apprehended immediately.

Wilson was arraigned in County Court of the State of New York, Monroe County, before Judge Patricia Marks on February 23, 1994, and charged with one count of robbery in the first degree. Because Wilson was indigent, Judge Marks assigned an attorney to represent him. For reasons that are unclear from the record, however, this attorney soon thereafter withdrew as Wilson's counsel, and Judge Marks assigned Bradley C. Bennett to replace him.

On or about April 22, 1994, approximately three weeks before Wilson's trial was scheduled to begin, Wilson wrote a letter to Judge Marks stating that he "no longer ha[d] confidence" in Bennett and intended to proceed *pro se*. One week later, on April 29, 1994, Judge Marks held a hearing to address the matter. At the hearing, Wilson asserted that there were "irreconcilable differences" between his attorney and himself, and informed Judge Marks that he "simply decided [he] would handle [his] own case." Despite questions from Judge Marks, Wilson did little to elaborate on the reasons for his dissatisfaction with Bennett; nevertheless, he unambiguously asserted a lack of confidence in Bennett and in Bennett's preparation for trial, and argued that he, Wilson, would "be more zealous in [his] own representation than anyone else." During the hearing, Wilson stated at least seven times that he wanted to represent himself, and asserted that he had "an absolute constitutional right" to do so.

Judge Marks conducted an extensive inquiry into Wilson's background and legal experience. Wilson informed Judge Marks that he had been tried three previous times in complicated proceedings, and that he had participated extensively in his own defense on each occasion; that he was familiar with the order of a trial and the rules of evidence; that he had been reading law books in preparation for his trial; and that he had prepared written questions for his attorney to ask witnesses in a prior trial. In the course of this questioning, however, Wilson interrupted Judge Marks several times, prompting her to note for the record that Wilson had "decline[d] to answer questions that would permit [her] to determine whether waiving his right to counsel ... is a knowing, intelligent and voluntary waiver." At the conclusion of the hearing, in a colloquy set forth in the margin, Judge Marks concluded that Wilson had not knowingly, intelligently, and voluntarily waived his right to counsel, and therefore denied his application to represent himself.[1]

1. In addition to making a request to represent himself, Wilson demanded that he be allowed daily access to the law library in jail. When Judge Marks responded that she could not

Although Bennett stayed on as Wilson's attorney after the April 29, 1994 hearing, he was not to remain in that capacity for long. On May 13, 1994, citing a belief that his and his family's "physical well-being" might be "at jeopardy" if he continued to represent Wilson, Bennett requested that he be permitted to withdraw from the case. After determining that Wilson had no objection, Judge Marks granted Bennett's request to withdraw. She then appointed Garry Hanlon to replace Bennett as Wilson's counsel.

Judge Marks asked Wilson if Hanlon's assignment was "agreeable" with him, but before Wilson could respond Hanlon stated:

> Your Honor, if I may interject at this point in time. Please hold on a second, Mr. Wilson.
>
> . . . It's my understanding Mr. Wilson has indicated he wishes to proceed *pro se*, and that the Court is reluctant to allow him to do that due to the complexity of the charges, as well as the risks that he faces in light of his background.

It's my understanding that the Court is going to allow me to have a week as his attorney to review his request with regard to the *pro se* application. . . .

Judge Marks then responded: "That's fine. One of my findings, however, on previous colloquy, was that the defendant has conducted himself in a way that would interfere with a fair and orderly trial, and this continues to demonstrate that." Thereafter, without asking Wilson again whether Hanlon's appointment as counsel was acceptable to him, Judge Marks adjourned the trial to May 20, 1994.

Like Bennett, Hanlon was not to last long as Wilson's counsel. On May 23, 1994, in another hearing before Judge Marks, Hanlon withdrew as counsel because of a conflict of interest.[2] Judge Marks then appointed Culver Barr as counsel, and designated November 28, 1994 as a new trial date. When asked if Barr's appointment as counsel was "agreeable" to him, Wilson voiced no objection, and stated nothing about representing himself. Moreover, during the remainder

---

order the sheriff to provide him with daily access to the library, Wilson stated that "if [he could not] have those basic things that [he was] requesting, it would be impossible for [him] to conduct this trial." The following colloquy then occurred:

> [JUDGE MARKS]: Very well, Mr. Bennett will remain in the case, and the trial will proceed on May 16th.
>
> . . . . .
>
> I don't see this as a knowing and intelligent and voluntary waiver of your right to counsel, and I don't believe you are ready to proceed *pro se* on May 16th.
>
> . . . . .
>
> [WILSON]: So, Your Honor, may I say in sum and substance, say here regardless of my desire . . . not to have this counsel represent me, that you are going to impose him on me and he is going to conduct a trial on my behalf?
>
> [JUDGE MARKS]: That's what I am saying. You have a right to counsel, and the only way you can waive that right to counsel is if the Court conducts an inquiry to determine whether it's a knowing, intelligent

and voluntary waiver as to a matter of whether or not you like your attorney.

> [WILSON]: It's not a matter of liking him, Your Honor.
>
> [JUDGE MARKS]: That's what I'm hearing. Your attorney has attempted to communicate with you, and you have chosen not to communicate with him. . . . The trial is scheduled in a little over two weeks. I suggest you cooperate with your attorney. Try to resolve any further conflicts. He is a good attorney. He is an experienced attorney, and he is capable of handling your defense in a very effective way.
>
> [WILSON]: Obviously I don't agree with that, Your Honor. I feel I have an absolute constitutional right to represent myself, and I don't have to [give] any explanation as to why.
>
> [JUDGE MARKS]: Again, this is again an indication of your lack of understanding of the law.

**2.** The reason for Hanlon's conflict of interest is not apparent from the record on appeal.

of pre-trial proceedings and during the trial, which finally began as scheduled on November 28, 1994, there was no discussion on the record concerning Barr's representation or Wilson's previously expressed desire to proceed *pro se.*

After trial, the jury convicted Wilson of robbery in the first degree. On February 6, 1995, Wilson was sentenced as a persistent violent felony offender under New York law to a term of imprisonment of 25 years to life. Upon exhaustion of state court remedies, Wilson filed a petition for the writ of habeas corpus with the District Court, asserting, *inter alia,* that his Sixth Amendment right to self-representation had been violated. By Decision and Order filed June 16, 1998, the District Court denied Wilson's petition. With respect to Wilson's Sixth Amendment claim—the only claim at issue here—the District Court concluded that, although Wilson had "clearly and unambiguously" asserted his right to self-representation at the April 29, 1994 hearing, he thereafter waived the right through abandonment. We granted a Certificate of Appealability with respect to whether Wilson waived his right to self-representation.

## II.

■ Under the Sixth Amendment to the Constitution, an accused is guaranteed the right to represent himself. *See Faretta v. California,* 422 U.S. 806, 819–20, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A criminal defendant is entitled to proceed *pro se* if he "knowingly, voluntarily, and unequivocally" waives his right to appointed counsel. *Johnstone v. Kelly,* 808 F.2d 214, 216 (2d Cir.1986) (citing *Faretta,* 422 U.S. at 835–36, 95 S.Ct. 2525). Assuming that a defendant's waiver meets this standard and the matter is raised prior to the start of the trial, " '[t]he right of a defendant in a criminal case to act as his own lawyer is *unqualified* . . . .' " *Williams v. Bartlett,* 44 F.3d 95, 99 (2d Cir.1994) (quoting *Unit-*

*ed States ex rel. Maldonado v. Denno,* 348 F.2d 12, 15 (2d Cir.1965)) (emphasis in *Williams* ). Moreover, a court's denial of the right to self-representation is not subject to harmless error analysis, and requires automatic reversal of a criminal conviction. *See Johnstone,* 808 F.2d at 218.

■ The right to self-representation attaches only if it is asserted "clearly and unequivocally." *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525. "Once asserted, however, the right to self-representation may be waived through conduct indicating that one is vacillating on the issue or has abandoned one's request altogether." *Williams,* 44 F.3d at 100 (citing *Brown v. Wainwright,* 665 F.2d 607, 611 (5th Cir. 1982) (en banc)). Thus, "[a] waiver may be found if it reasonably appears to the court that defendant has abandoned his initial request to represent himself." *Brown,* 665 F.2d at 611. However, to avoid waiver of a previously invoked right to self-representation, a defendant need not "continually renew his request to represent himself even after it is conclusively denied by the trial court. After a clear denial of the request, a defendant need not make fruitless motions or forego cooperation with defense counsel in order to preserve the issue on appeal." *Id.* at 612; *accord United States v. Arlt,* 41 F.3d 516, 523 (9th Cir.1994) ("[O]nce a defendant has stated his request clearly and unequivocally and the judge has denied it in an equally clear and unequivocal fashion, the defendant is under no obligation to renew the motion.").

■ In the present case, Wilson clearly and unequivocally asserted his right to represent himself. At the April 29, 1994 hearing, Williams asserted no fewer than seven times that he wanted to represent himself, and even invoked his constitutional right to proceed *pro se* explicitly.[3] To be sure, Judge Marks did not

---

**3.** Even assuming that Wilson's principal reason for seeking to proceed *pro se* was dissatis-

faction with Bennett's representation and that Wilson might have been satisfied with a sub-

engage in the sort of questioning likely to elicit whether Wilson was waiving his right knowingly and intelligently—for instance, much of her inquiry focused on whether Wilson was able and qualified to defend himself, a matter that is simply irrelevant to the necessary determination. *See Godinez v. Moran,* 509 U.S. 389, 399, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993) ("[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right,* not the competence to represent himself."); *see also United States v. Fore,* 169 F.3d 104, 108 (2d Cir.1999) (discussing the issues a court should explore when a defendant asserts the right to represent himself). However, from a review of the hearing transcript, and in light of Wilson's background and previous experiences in the criminal justice system, we think it is plain that Wilson showed a "purposeful choice reflecting an unequivocal intent to forego the assistance of counsel." *Williams,* 44 F.3d at 100 (internal quotation marks omitted).[4]

■ That said, we agree with the District Court that Wilson waived his right to self-representation through abandonment. Whether or not Judge Marks's ruling at the April 29, 1994 hearing could be construed as a "clear denial" of Wilson's request to proceed *pro se, Brown,* 665 F.2d at 612, it is apparent that both Wilson and Judge Marks considered the matter still open for discussion on May 13, 1994.[5] On that date, Hanlon was appointed to replace Bennett as Wilson's counsel, and Judge

Marks granted Hanlon one week "to review [Wilson's] request with regard to the *pro se* application." To be sure, Judge Marks's remarks to Hanlon may indicate that she would have been disinclined to grant Wilson's request to represent himself had it been renewed. However, in the absence of additional evidence, we are unwilling to assume that a renewal of Wilson's request would have been "fruitless." *Id.; cf. Williams,* 44 F.3d at 101 (concluding that the petitioner's failure to reassert a desire to represent himself did not constitute abandonment because the court's rejection of the initial request "was categorical, and expressly relied on the advanced stage of the proceedings and the defendant's lack of education—obstacles that were not going to be removed before trial"); *Arlt,* 41 F.3d at 523–24 (concluding that the defendant was under no obligation to renew his request to proceed *pro se* when the trial judge had categorically rejected four previous requests).

In view of the fact that there were two subsequent changes in the attorney appointed to represent Wilson and the question of self-representation was left open for possible further discussion, we conclude that Wilson's failure to reassert his desire to proceed *pro se* constituted a waiver of his previously asserted Sixth Amendment right. Following Judge Marks's initial denial of Wilson's request, there were two separate hearings concerning Wilson's representation. On both of these occasions— and during the remainder of pre-trial pro-

stitution of counsel, his requests were clear and unequivocal. As we noted in *Williams,* "a defendant is not deemed to have equivocated in his desire for self-representation merely because he expresses that view in the alternative, simultaneously requests the appointment of new counsel, or used it as a threat to obtain private counsel." 44 F.3d at 100.

4. We note that a court may deny a defendant's request to proceed *pro se* if it finds that the request is "manipulative or abusive in some other way." *Williams,* 44 F.3d at 101. In the present case, however, although Judge Marks implied at the April 29 and May 13,

1994 hearings that she viewed Wilson's request to proceed *pro se* as a delaying tactic, she did not make explicit findings to that effect.

5. Judge Marks's ruling at the April 29, 1994 hearing appears to have been based in part on her perception that Wilson had "decline[d] to answer questions that would permit [her] to determine" whether his waiver was valid. Insofar as that was the case, there is no reason to believe that Judge Marks's denial of Wilson's request to proceed *pro se* was clear or final.

ceedings and during trial—Wilson remained silent with respect to the issue of his representation, voicing no dissatisfaction with the attorneys appointed to represent him and choosing not to reassert his desire to proceed *pro se.* Moreover, this silence stands in stark contrast to Wilson's willingness to assert his perceived rights at other points during the proceedings. Indeed, he initiated the request to proceed *pro se* by writing himself to Judge Marks; and in subsequent proceedings, he pointedly questioned Judge Marks's impartiality, and ultimately invoked his right not to attend the trial.

In short, from Wilson's apparent cooperation with Hanlon and Barr, his failure at any point after Bennett's withdrawal from the case to voice any dissatisfaction with his representation, and his decision not to reassert his previously asserted right to represent himself, it "reasonably appears" that Wilson "abandoned his initial request to represent himself." *Brown,* 665 F.2d at 611. Accordingly, the judgment of the District Court is affirmed.