******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* VELMON
DANNY BRASWELL
(SC 19230)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Robinson, Js.

*Argued March 23—officially released September 29, 2015*

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Michelle Manning*, assistant state's attorney, for the appellant (state).

*Alice Osedach*, assistant public defender, for the appellee (defendant).

*Opinion*

ZARELLA, J. In this appeal, we are asked to decide whether the Appellate Court properly determined that the trial court's denial of the request by the defendant, Velmon Danny Braswell, to represent himself was improper, and, if so, whether the Appellate Court correctly determined that the impropriety constitutes structural error. The defendant was convicted of kidnapping in the second degree in violation of General Statutes § 53a-94 (a), and interfering with an officer in violation of General Statutes § 53a-167a (a). He appealed from the trial court's judgment of conviction, claiming, inter alia, that the trial court improperly had denied him his right to self-representation. The Appellate Court agreed and reversed the judgment of conviction. We granted the state's petition for certification to appeal.

On appeal, the state claims that the trial court properly denied the defendant's April 28, 2010 request to represent himself because the defendant's behavior during the court's canvass provided sufficient grounds for the court to deny the motion. It further claims that, even if the trial court did improperly deny the defendant's request, the judgment of conviction should nonetheless have been affirmed because the defendant subsequently waived his right to self-representation and the denial, even if improper, was harmless. The defendant responds that the trial court's denial was improper because it was based on incorrect grounds—the adequacy of defense counsel—and the impropriety is structural error. We agree with the defendant and affirm the judgment of the Appellate Court.

The record reveals the following relevant facts. Attorney Benjamin Aponte of the Division of Public Defender Services, was appointed to represent the defendant. On April 6, 2010, the defendant filed a pro se, handwritten motion with the trial court entitled, "Motion for [Removal of] Attorney And Motion [T]o [G]o Pro-Se in Case." This was one of a number of pro se motions the defendant filed.[1] In the motion, the defendant requested that the court allow him to proceed pro se due to Aponte's alleged inaction and his alleged failure to provide the defendant with discovery and other legal materials he had requested. The defendant's first appearance before the court after filing this motion was on April 28, 2010, on which date jury selection was scheduled to begin.

At the opening of the April 28 hearing, the defendant was not present in the courtroom. Aponte conveyed to the court: "[The defendant] informed me that he does not wish to come out and have me represent him. He's indicated to me that . . . he would prefer to go pro se . . . ." Additionally, Aponte informed the court that the defendant had said he would be disruptive if the court

forced him to appear and proceed with the trial. The court instructed that the defendant be brought out, after which the court stated: "Now . . . just before you came out, Attorney Aponte told me that you did not wish to go forward this morning. You either did not wish to go forward, or you did not wish to use Attorney Aponte as your counsel." In response, the defendant explained: "There's a conflict [of] interest between me and Attorney Aponte. . . . I don't feel he's—has enough time to spend with me on my case." The defendant stated that he felt that Aponte had not been responsive to his requests for discovery materials and that Aponte was overworked and therefore not dedicating enough time to the defendant's case. The court responded by informing the defendant that it had spoken with Aponte about a trial schedule, jury selection was to begin that day, the trial was scheduled to begin in four weeks, Aponte had spoken with the state about discovery compliance, and the court would take up any discovery motions to ensure the defendant received the discovery to which he was entitled and had time to prepare for trial. Finding the court's response unsatisfactory, the defendant replied: "[With] [a]ll due respect, Your Honor, I still have a problem with this attorney being on my case. . . . I want to be able to prepare myself for this case. And I also put the motion in to go pro se, if I have to. I do not trust the public defender's office at this point." Continuing, the defendant stated: "There is a prejudice that I went through in the last six months, that's put me in hardship. And, right now, I don't trust it. And I would leave the courtroom, because I would hate to make a scene in here, in front of the jury. . . . [A]nd I'm going to respect [the court]. And I'm going to ask to remove myself from the courtroom and protest that I don't want this attorney on my case. And—it's simple."

After this last declaration that the defendant did not wish to continue to be represented by Aponte, the court asked whether the defendant had substitute counsel who was ready to proceed. The defendant did not have substitute counsel and asked how he could be ready to proceed when he had not received the requested discovery. The court then addressed Aponte and the assistant state's attorney regarding discovery issues. After hearing from the attorneys, the court returned to the defendant: "[W]hat I'm hearing is not some[thing] unusual from the perspective of the defendant. . . . But it sounds to the court as if, within the limits of what has been given to Attorney Aponte, he's provided reasonable access to you. And, if I understand what I'm hearing correctly, he intends to continue that flow of information, as he receives it from the state." The court indicated that it would keep an open mind with respect to the discovery issues and address any specific problems as they arose. The court concluded by stating: "I'm happy to talk to you about—do you want to con-

tinue with Attorney Aponte or not? What I need to know, really, before I could—you know—respond affirmatively to that request is, one, have you got counsel that's ready to come in, in place of Attorney Aponte? Or are you in a position where you can meaningfully defend yourself?" The defendant replied: "At this point, Your Honor, it's all me. I've gotta defend myself the best I know how. And with the little background law, I'm gonna do it the best I can."

Following this third request to represent himself, the court began to ask the defendant about his background. At first, the defendant's answers were nonresponsive. He began by again bringing up his discovery concerns and then referenced the various motions for a speedy trial that he had filed pro se. At this point, the court expressed its view that the defendant had a generalized complaint about Aponte and the time the defendant perceived Aponte had put into the defendant's case. The court continued: "I don't have any specific information that would enable me to make a finding, or even to think that there's a reasonable basis for that. So, I'm going to deny your request to proceed pro se. I'm happy to talk to you further about that. What I need to know, if you want to proceed pro se, [is] your educational background, what experience you have in handling legal matters, [and] whether you're prepared on the issues you anticipate coming up in this case. . . . [T]hese are serious charges, and ones where the assistance of competent and trained counsel really is all but essential. And I strongly encourage you to use counsel. And I haven't heard anything as to why this attorney would be inappropriate."

After the court's second request for background information, the defendant informed the court that he had fourteen years of education, he had spent two years working for the campus police at Western Connecticut State University, he had testified in "[s]ay three" trials while working for the campus police, and he had once successfully represented himself in a criminal trial in Pennsylvania. When questioned about the charges in Pennsylvania, the defendant refused to discuss them. The court then asked the defendant if there were any other credentials, qualifications, or experience the court should know about. It also reiterated that the defendant was facing serious charges. The defendant responded that he understood and that he was asking for the discovery and some time to prepare his case "without the help of Mr. Aponte."[2]

Following the colloquy between the court and the defendant regarding the defendant's background, the court concluded:

"Well, here's what I'm going to do. . . . I'm not going to grant that motion today. What I'm going to do is—I am going to take up with counsel the status of discovery later today. I'm going to make sure that we've got a

strict time schedule to get everything that can be gotten, directly to Attorney Aponte.

"He assures me it's going to be communicated to you. . . . [E]verything's going to be [given] to you, and we're not going to start this proceeding until May 26, a full four weeks away from today.

"If something comes up between now and then, that you have substitute counsel in and ready to go, [or, if] an issue comes up with regard to discovery, I'm happy to hear it. I don't want to say no, because I don't know what's going to come up in the next four weeks.

"But, at this point, I'm not going to grant your motion. And I'm going to deny the motion for any continuance in [the] trial date at this time. And I'm going to deny the motion to discharge counsel or allow you to proceed pro se.

"If, in the next four weeks, I see some additional support for those, I'm happy to reconsider them, okay?"

The court turned to jury selection after it denied the defendant's motion. It encouraged the defendant to stay and participate in jury selection, but it warned the defendant that, if he became disruptive, he might prejudice his case and might be removed from the courtroom. The defendant asked to leave the courtroom and became disruptive as the court attempted to canvass him regarding his right to be present.[3] After unsuccessfully attempting to canvass the defendant, the court ordered that he be taken to the observation room to observe the proceedings, as he wished. After the defendant was removed from the courtroom, Aponte expressed concern over proceeding when the defendant did not trust him and did not want his representation. He requested time to consider how to best protect the defendant's rights. The court granted a short recess. During the recess, the defendant reported arm pain and requested medical attention. Emergency medical personnel were called, and the court adjourned the proceedings for the day without commencing jury selection.

The defendant next appeared before the court on May 4, 2010. He again expressed concerns about not receiving discovery materials and listed a few specific items he wanted to obtain. Aponte then handed the defendant a redacted copy of the police report, one of the items the defendant had requested. The defendant indicated that he wanted time to review the report because he might want to file additional motions. The court, however, decided to proceed with jury selection and asked if the defendant wanted to participate. The following colloquy ensued:

"The Defendant: I'd like to just leave the—I'd like to just leave upstairs. I don't want to have nothing to do with that right now.

"The Court: So you do not wish to participate—

"The Defendant: Due to the fact that I want to look through this, so I'll look first, and I've been asking for this for a long time, and I finally got it in my hand and I'd like to look through it.

\* \* \*

"The Defendant: I'm not willing to do any—I'm not willing to go to the jury process now. I'm going to put it in my—for now, Attorney Aponte's—I trust him in that area, and I don't have nothing to do with it.

\* \* \*

"The Defendant: I want to look at this [police report]. That's where my mind is at, and my mind wouldn't be on the jury. I wouldn't—it wouldn't be right having me here because I would disagree with that right now."

During a further exchange, the defendant indicated that he would be disruptive if he was forced to remain in the courtroom. Thus, the court excused the defendant to the observation room, but, before the defendant left the courtroom, Aponte objected to the proceedings moving forward because the defendant had indicated he wished to withdraw his pro se speedy trial motions. After the defendant confirmed that he wished to withdraw the motions, the court continued the matter for sixty days and did not commence jury selection. The court then considered and granted the state's motion to obtain nontestimonial evidence (a buccal swab sample) from the defendant. Aponte represented the defendant in connection with that motion.

On July 20, 2010, the court reconvened to commence jury selection. At the beginning of the proceedings, Aponte reported that the defendant had been "roughed up by the marshals" and was requesting medical attention. The court queried the defendant and the marshals to ascertain what had happened. During this exchange, the defendant reiterated that he would rather represent himself. The court indicated that it first wanted to address the incident between the defendant and the marshals. After questioning the defendant and the marshals, the court determined that the defendant could participate in the proceedings in a meaningful way and that the proceedings would continue. At that point, the defendant requested to leave the courtroom. The court allowed the defendant to go to the observation room. After the defendant was escorted from the courtroom, Aponte indicated to the court that he believed the defendant had requested to proceed pro se and suggested the court should address that issue at a later time. The court responded: "We addressed it last time, didn't we?" Aponte indicated he was not sure whether they had.

Jury selection then commenced and continued on July 21 and 22, 2010. The defendant again requested to proceed pro se twice on July 27, 2010, and once on

August 9, 2010. The court denied all three requests. The defendant's trial was held on August 9 and 10, 2010, and, on August 10, the jury found the defendant guilty of both kidnapping in the second degree and interfering with an officer. On October 26, 2010, the court sentenced the defendant to a total effective term of twelve years imprisonment, followed by eight years of special parole.

The defendant appealed to the Appellate Court from the trial court's judgment of conviction, claiming, inter alia, that the trial court improperly had denied him his right to self-representation on April 28, 2010. The Appellate Court agreed that the trial court's denial of the defendant's motion to proceed pro se was improper. *State* v. *Braswell*, 145 Conn. App. 617, 636, 76 A.3d 231 (2013). It further concluded that the improper ruling is structural error; see id.; and, therefore, reversed the judgment of conviction and remanded the case for a new trial. Id., 644. We thereafter granted the state's petition for certification to appeal from the Appellate Court's judgment. *State* v. *Braswell*, 310 Conn. 939, 939–40, 79 A.3d 892 (2013).

I

We first address the state's claim that the trial court properly denied the defendant's April 28, 2010 request to represent himself. The state claims the denial was proper because the defendant's disruptive behavior was sufficient to establish that he was unable to represent himself. In response, the defendant avers that the trial court's denial was improperly based on the ground that there were insufficient facts to warrant the discharge of defense counsel. We agree with the defendant.

We begin with the governing legal principles. The sixth amendment to the United States constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." This right is made applicable to state criminal prosecutions through the fourteenth amendment's due process clause. See, e.g., *Gideon* v. *Wainwright*, 372 U.S. 335, 342, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). Embedded within the sixth amendment right to assistance of counsel is the defendant's right to elect to represent himself, when such election is voluntary and intelligent. See, e.g., *Faretta* v. *California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

We have long recognized this important right. See, e.g., *State* v. *Flanagan*, 293 Conn. 406, 418, 978 A.2d 64 (2009); *State* v. *Brown*, 256 Conn. 291, 302, 772 A.2d 1107, cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001). We have also observed, however, that "[t]he right to counsel and the right to self-representation present mutually exclusive alternatives." (Internal quotation marks omitted.) *State* v. *Flanagan*, supra, 418. Although both rights are constitutionally protected,

a defendant must choose between the two. Id. We require a defendant to clearly and unequivocally assert his right to self-representation because the right, unlike the right to the assistance of counsel, protects interests other than providing a fair trial, such as the defendant's interest in personal autonomy. *State* v. *Jones*, 281 Conn. 613, 648, 916 A.2d 17, cert. denied, 552 U.S. 868, 128 S. Ct. 164, 169 L. Ed. 2d 112 (2007). "Put another way, a defendant properly exercises his right to self-representation by knowingly and intelligently waiving his right to representation by counsel." (Internal quotation marks omitted.) *State* v. *Flanagan*, supra, 418.

Once the right has been invoked, the trial court *must* canvass the defendant to determine if the defendant's invocation of the right, and simultaneous waiver of his right to the assistance of counsel, is voluntary and intelligent. See, e.g., *State* v. *Pires*, 310 Conn. 222, 231, 77 A.3d 87 (2013). The United States Supreme Court has explained: "[I]n order competently and intelligently to choose self-representation, [a defendant] should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." (Internal quotation marks omitted.) *Faretta* v. *California*, supra, 422 U.S. 835. That court further explained that a record that affirmatively shows that the defendant is "literate, competent, and understanding, and that he [is] voluntarily exercising his informed free will" is sufficient to support a finding that the defendant voluntarily and intelligently invoked his right. Id. Practice Book § 44-3[4] serves to guide our trial courts in making this inquiry. *State* v. *Flanagan*, supra, 293 Conn. 419. Nevertheless, "[b]ecause the . . . inquiry [under Practice Book § 44-3] simultaneously triggers the constitutional right of a defendant to represent himself and enables the waiver of the constitutional right of a defendant to counsel, the provision of § [44-3] cannot be construed to require anything more than is constitutionally mandated." (Internal quotation marks omitted.) Id. Thus, the court need not question a defendant regarding all of the Practice Book § 44-3 factors. *State* v. *T.R.D.*, 286 Conn. 191, 204, 942 A.2d 1000 (2008). Instead, the analysis under that rule of practice is designed to help the court answer two questions: "[W]hether a criminal defendant is minimally competent to make the decision to waive counsel, and . . . whether the defendant actually made that decision in a knowing, voluntary and intelligent fashion." (Internal quotation marks omitted.) *State* v. *D'Antonio*, 274 Conn. 658, 712, 877 A.2d 696 (2005). To date, courts have recognized four instances in which a court may deny a defendant's timely request to represent himself. A defendant's request may be denied when a court finds that the defendant is not competent to represent himself; see, e.g., *Indiana* v. *Edwards*, 554 U.S. 164, 174, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008); or that he has

not knowingly and intelligently waived his right to the assistance of counsel. See, e.g., *Faretta* v. *California*, supra, 835. A court can also deny such request because it was made for dilatory or manipulative purposes; e.g., *State* v. *Jordan*, 305 Conn. 1, 22, 44 A.3d 794 (2012); see also *United States* v. *Mackovich*, 209 F.3d 1227, 1238 (10th Cir.), cert. denied, 531 U.S. 905, 121 S. Ct. 248, 148 L. Ed. 2d 179 (2000); or because the defendant's behavior is disruptive or obstructive. See, e.g., *Faretta* v. *California*, supra, 834 n.46; *State* v. *Jones*, supra, 281 Conn. 648.

Mindful of these principles, we now consider whether the trial court's denial of the defendant's motion to represent himself was proper. We review a trial court's decision regarding a defendant's request to proceed pro se for abuse of discretion. See, e.g., *State* v. *Flanagan*, supra, 293 Conn. 420.

There is no dispute that the defendant in the present case clearly and unequivocally invoked his right to represent himself. On April 6, 2010, the defendant filed a motion requesting that the court allow him to proceed pro se. Further, on April 28, 2010, both he and his attorney informed the court that the defendant wished to represent himself. Thus, the court was obligated to canvass the defendant to determine if his invocation of the right to self-representation and consequent waiver of his right to counsel were knowing and intelligent. See, e.g., *State* v. *Pires*, supra, 310 Conn. 231.

After the defendant first stated that he wanted to represent himself, the court engaged the defendant in a colloquy. The trial court discussed with the defendant his concerns regarding discovery and Aponte's representation of him. The court attempted to allay the defendant's concerns by informing him that Aponte had spoken with the assistant state's attorney about discovery and that Aponte had ensured the court that he would promptly forward all discovery materials to the defendant once he received them from the state. Unsatisfied, however, the defendant again stated he did not want Aponte to continue to represent him but, instead, wished to represent himself. The court inquired as to whether the defendant had replacement counsel who was ready to proceed, to which the defendant replied: "Right now, there's no discovery in front of me, sir. How can I prepare for a case?" Following the defendant's comment, the court engaged in a colloquy with defense counsel and the assistant state's attorney regarding discovery. After that exchange, the court addressed the defendant as follows: "[W]hat I'm hearing is not some-[thing] unusual from the perspective of the defendant. . . . But it sounds to the court as if, within the limits of what has been given to Attorney Aponte, he's provided reasonable access to you. And, if I understand what I'm hearing correctly, he intends to continue that flow of information, as he receives it from the state." The court

continued: "I'm happy to talk to you about—do you want to continue with Attorney Aponte or not?" The defendant again indicated he wished to represent himself.

If the colloquy between the trial court and the defendant is the canvass required by Practice Book § 44-3, it is clear from the record that the court tied the canvass to the wrong conclusion. Instead of determining whether the defendant was knowingly and intelligently invoking his right to self-representation, the court, through the exchange, was attempting to alleviate any concerns the defendant may have had with respect to the alleged problems between him and Aponte. Following the defendant's third request to represent himself, however, the court clearly began, if it had not before, the canvass required by Practice Book § 44-3 by asking about the defendant's background.[5] Rather than answer that question, the defendant again began to air his discovery concerns, at which point the court expressed its view that the defendant had a generalized complaint about Aponte. The court continued: "I don't have any specific information that would enable me to make a finding, or even to think that there's a reasonable basis for that [complaint]. So, I'm going to deny your request to proceed pro se."

After this first denial, the court immediately reconsidered its decision and told the defendant that, if he wanted to proceed pro se, it needed to first hear about his educational background, legal experience, and whether he was prepared to handle the case. During the colloquy regarding the defendant's background, education, and experience, the court learned that the defendant had fourteen years of education, spent two years in law enforcement, and had testified at three trials. The defendant also disclosed that he had successfully represented himself in a case brought by the commonwealth of Pennsylvania, although he would not discuss the charges in the Pennsylvania case with the trial court. After asking if the defendant had any other credentials, qualifications, or experience about which the court should know, the court concluded: "Well, here's what I'm going to do. . . . I'm not going to grant that motion today. What I'm going to do is—I am going to take up with counsel the status of discovery later today. I'm going to make sure that we've got a strict time schedule to get everything that can be gotten, directly to Attorney Aponte.

"He assures me it's going to be communicated to you. . . . [E]verything's going to be [given] to you, and we're not going to start this proceeding until May 26, a full four weeks away from today.

"If something comes up between now and then, that you have substitute counsel in and ready to go, [or, if] an issue comes up with regard to discovery, I'm happy to hear it. I don't want to say no, because I don't know

what's going to come up in the next four weeks.

"But, at this point, I'm not going to grant your motion. . . . And I'm going to deny the motion to discharge counsel or allow you to proceed pro se."

After reviewing the foregoing record, we conclude that the basis for the trial court's denial of the defendant's request to represent himself was the state of discovery and the defendant's allegations against Aponte. This is demonstrated by the fact that the court's first denial was immediately preceded by its statement that the defendant appeared to have a generalized grievance about Aponte that was not supported by any evidence presented to the court. In denying the request a second time, the court stated it would take up the issue of discovery with counsel later that day and ensure that there was a strict discovery time schedule. Thus, the transcript of the April 28, 2010 hearing makes clear that this was the only basis for the trial court's ruling.

Our cases establish that a trial court's duty, after a defendant has waived his right to counsel and invoked his right to represent himself, is to determine whether the defendant's waiver and invocation of the right were knowing and intelligent. See, e.g., *State* v. *T.R.D.*, supra, 286 Conn. 204. If it is, the court must, in most cases, grant the defendant's request. This right is even nearer to absolute when it is invoked at the preliminary stages of the proceedings, as it was in the present case. See *State* v. *Flanagan*, supra, 293 Conn. 431 ("[when] a defendant's request to proceed pro se is informed, voluntary and unequivocal, [t]he right of a defendant in a criminal case to act as his own lawyer is *unqualified* if invoked prior to the start of trial" [emphasis in original; internal quotation marks omitted]). Prior to trial, a court is not free to investigate the adequacy of defense counsel and, upon discovering that counsel is providing adequate assistance, require the defendant to continue to be represented by counsel.[6] See id. In fact, we found such a response to a defendant's request to represent himself improper in *State* v. *Jordan*, supra, 305 Conn. 16–18.[7] The right to represent oneself is not only exercisable when a defendant is dissatisfied with counsel. It also protects a defendant's interest in autonomy and his right to put on his own defense, at all critical stages of the proceedings. See, e.g., *McKaskle* v. *Wiggins*, 465 U.S. 168, 174, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984) ("[t]he pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial"). Indeed, a defendant is entitled to represent himself when he is competent to do so and chooses to do so knowingly and intelligently. Thus, we conclude that it was an abuse of the trial court's discretion to deny the defendant his constitutional right to represent himself on the basis

of the quality of counsel and state of discovery. More-over, the state agrees that these were improper grounds for denial.

Nevertheless, the state contends that the trial court did not abuse its discretion because the defendant, through his behavior, forfeited his right to self-representation. In particular, the state draws our attention to the defendant's statement that he would be disruptive if he was not permitted to represent himself. It also contends that the defendant, when addressed by the court, interrupted the court, declined to answer questions posed by the court, and threatened to leave the courtroom. Although we agree that a defendant may forfeit his right to self-representation by exhibiting disruptive behavior; e.g., *State* v. *Jones*, supra, 281 Conn. 648; the defendant's behavior was not the reason for the court's denial in the present case. As we discussed previously, it is abundantly clear from the record that the court denied the defendant's request on the basis of the adequacy of counsel and the state of discovery.

Even assuming, arguendo, that the trial court's decision was based on the defendant's conduct, we do not agree that that conduct rose to the level that would effectuate a forfeiture of the defendant's constitutional right. First, we do not agree with the state's reading of the record. It is true that the defendant indicated on April 28, 2010, that he would disrupt the proceedings if he were not allowed to represent himself. Beyond that, however, the defendant was respectful of the court. He generally did not interrupt the court, and he answered the court's questions, with only a few exceptions. With respect to the defendant's conduct following the court's ruling on April 28—at which time he did become disruptive and disrespectful—it is irrelevant to our consideration of the propriety of the court's original denial of the defendant's request to represent himself.

Second, the defendant's conduct on April 28 was far from the type of conduct that this court previously has deemed to effect a forfeiture of the right to self-representation. In *State* v. *Jones*, supra, 281 Conn. 648–49, we held that a defendant could forfeit his right to self-representation, even without a canvass by the court, through disruptive behavior. In that case, unlike in the present case, the defendant, Jermaine Jones, had been significantly disruptive *prior* to the court's denial of his request to represent himself. See id., 649. For example, Jones argued with the court after nearly every adverse ruling, and, after the court denied his motion to suppress, he broke a bone in his hand by punching through a Plexiglas window in anger over the court's ruling. See id., 620–32. Further, while arguing with the court over a different ruling, Jones appeared to grow angry as the colloquy ensued. See id., 625–28. At the climax, Jones requested, while actively and forcibly

resisting the marshals' efforts to restrain him, to represent himself. Id., 628. The court promptly denied the request and ordered that Jones be removed from the courtroom, as he had requested. Id. Jones "scuffle[d]" with the marshals, and he "had to be physically restrained by a number of [them]." (Internal quotation marks omitted.) Id. The trial court in *Jones* subsequently noted that it had grown concerned for the safety of those in the courtroom. See id., 630–31.

In *State* v. *Johnson*, 185 Conn. 163, 179, 440 A.2d 858 (1981), aff'd, 460 U.S. 73, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983), we also recognized that a defendant could forfeit his right to self-representation through his disruptive behavior. In that case, however, the forfeiture occurred because the defendant, after being allowed to represent himself, became so disruptive that he had to be removed from the courtroom. Id. Further, he did not return to the courtroom for the remainder of the trial. Id. In contrast, the defendant in the present case was never removed from the courtroom against his will. Moreover, as we previously noted, the defendant was respectful of the court and was not disruptive prior to its ruling on his motion to represent himself. Thus, he would have been present and able to represent himself if his request had been granted. We therefore agree with the Appellate Court that the trial court's denial of the defendant's request to represent himself was an abuse of its discretion.

II

We next consider whether the Appellate Court correctly determined that the trial court's improper denial of the defendant's right to self-representation is structural error and not subject to harmless error analysis. The United States Supreme Court has noted that the harmless error doctrine, which applies to some constitutional errors, serves the useful purpose of preventing the reversal of a conviction when there are minor trial errors or defects that have very little, if any, likelihood of affecting the result of the trial. *Chapman* v. *California*, 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Nevertheless, "there are some constitutional rights," the court noted, that are "so basic to a fair trial that their infraction can never be treated as harmless error . . . ." (Footnote omitted.) Id., 23. It has called such infractions "structural defects" or "structural error." (Internal quotation marks omitted.) *Sullivan* v. *Louisiana*, 508 U.S. 275, 281, 282, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993); see also *Arizona* v. *Fulminante*, 499 U.S. 279, 309, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (Rehnquist, J.) (referring to structural defects). The court has included within the category of structural errors, errors "that are necessarily unquantifiable and indeterminate"; *Sullivan* v. *Louisiana*, supra, 282; and it has indicated that the improper denial of the right to self-representation is included among such errors. See

*McKaskle* v. *Wiggins*, supra, 465 U.S. 177 n.8.

In *McKaskle*, the United States Supreme Court stated: "Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to harmless error analysis. The right is either respected or denied; its deprivation cannot be harmless." (Internal quotation marks omitted.) Id. As the state correctly notes, this quoted language in *McKaskle* is dictum. In that case, the court considered the appropriate role standby counsel could play after a defendant has asserted his right to self-representation and concluded that standby counsel had remained within the limits of that role. Id., 170, 187–88. Because the court found no error, its discussion regarding whether a violation of a defendant's right to self-representation could ever be harmless was dictum. At least twice, however, the court has reaffirmed its reasoning in *McKaskle*, albeit, again in dictum. See *Arizona* v. *Fulminante*, supra, 499 U.S. 308–10 (considering whether admission of involuntary confession is subject to harmless error analysis); *Flanagan* v. *United States*, 465 U.S. 259, 266–68, 104 S. Ct. 1051, 79 L. Ed. 2d 288 (1984) (addressing order disqualifying defense counsel). In *Fulminante*, the court cited *McKaskle* and the denial of the right to self-representation as an example of a constitutional deprivation that affects the framework of the trial proceedings. *Arizona* v. *Fulminante*, supra, 310. In *Flanagan*, the court went even further and stated that the right to counsel of one's choice is like the right to self-representation, and that "[o]btaining [a] reversal for [a] violation of such a right does not require a showing of prejudice to the defense, since the right reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding." *Flanagan* v. *United States*, supra, 268.

We believe, and at least six federal circuit courts of appeals agree, that the United States Supreme Court has strongly suggested that a denial of the right to self-representation can never be harmless. See, e.g., *Johnstone* v. *Kelly*, 808 F.2d 214, 218 (2d Cir. 1986) (citing cases), cert. denied, 482 U.S. 928, 107 S. Ct. 3212, 96 L. Ed. 2d 699 (1987). Moreover, the right to represent oneself protects interests other than ensuring that a defendant receives a fair trial. See, e.g., *Faretta* v. *California*, supra, 422 U.S. 819–20; *State* v. *Jones*, supra, 281 Conn. 648. The right protects the defendant's interests in autonomy and putting on his own defense. See, e.g., *McKaskle* v. *Wiggins*, supra, 465 U.S. 173–74; *State* v. *Flanagan*, supra, 293 Conn. 418; *State* v. *Jones*, supra, 648. The state contends that what is protected by the sixth amendment right to self-representation is the opportunity for the defendant to present his case to the jury. We do not agree. Self-representation "encompasses certain specific rights to have [one's] voice

heard. The pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." *McKaskle* v. *Wiggins*, supra, 174. Thus, the nature of the right is not one that is susceptible to harmless error analysis. To determine that the denial of the right to self-representation was tolerable because it did not influence the outcome of the trial, or a particular part of the proceedings, such as jury selection, would be to disregard the right completely and the interests it protects. Moreover, application of the "harmless error standard would, in practical effect, preclude vindication of the right. Since seasoned appointed counsel can almost invariably provide better legal representation than a pro se defendant, denial of a request to proceed pro se could rarely, if ever, be shown to have been [harmful]." *Johnstone* v. *Kelly*, supra, 218.

The state also argues that, even when the deprivation of a certain constitutional right has been determined to be structural, it does not necessarily follow that every "brief" or "trivial" deprivation of that right is structural error. It further asserts that the United States Supreme Court implicitly applied this principle in *McKaskle*. As we noted previously, in that case, the court considered what role court-appointed standby counsel could play consistent with the defendant's right to self-representation and whether standby counsel in that case exceeded those limits, thereby infringing on the defendant's rights. See *McKaskle* v. *Wiggins*, supra, 465 U.S. 170–71, 187–88. The court concluded that standby counsel can be appointed and can appear before the court and jury in certain instances, for example, at the defendant's request for representation or to assist with routine procedural and evidentiary obstacles, without violating the defendant's right to self-representation. Id., 183–84. It further concluded that standby counsel in *McKaskle* stayed within those limitations, and, therefore, the defendant was not denied his right to self-representation. Id., 188. The court reasoned, in part, that such involvement by standby counsel was only "slight[ly]" likely to erode the appearance that the defendant was defending himself and that this slight probability was "tolerable." Id., 183. The state quotes this language and suggests that the court's "analysis [in *McKaskle*] is akin to a harmless error analysis . . . ." Although the court's analysis in *McKaskle* may have been similar to harmless error analysis, that does not change what the court ultimately determined. The court did not decide that there was a violation of the defendant's right to self-representation but that the error was harmless; instead, the court determined that *there was no error at all. McKaskle* v. *Wiggins*, supra, 188. Therefore, we find the state's argument to be unpersuasive.

Finally, the state avers that both this court and the

Second Circuit have previously found errors in the handling of defendants' requests to proceed pro se but did not find structural error. We do not agree with the state's reading of the cases on which it relies. See *Wilson* v. *Walker*, 204 F.3d 33 (2d Cir.), cert. denied, 531 U.S. 892, 121 S. Ct. 218, 148 L. Ed. 2d 155 (2000); *State* v. *Pires*, supra, 310 Conn. 222. First, in *Pires*, we did not determine that the trial court improperly handled the request of the defendant, Michael D. Pires, Sr., to represent himself; in fact, we held the opposite. In that case, Pires argued that the trial court improperly failed to canvass him after he invoked his right to represent himself. *State* v. *Pires*, supra, 224–25. We determined, however, that Pires had not made a clear and unequivocal request to proceed pro se. Id., 238. In the absence of a clear and unequivocal request, the court had no obligation to canvass Pires and, therefore, committed no error. See *State* v. *Flanagan*, supra, 293 Conn. 423 ("there can be no infringement of the right to self-representation in the absence of a defendant's proper assertion of that right"). Because there was no error in *Pires*, we could not have applied a harmless error analysis.[8]

Second, the circumstances were similar in *Wilson*. In that case, the petitioner, James D. Wilson, submitted a written request to proceed pro se at his criminal trial, and the trial court held a hearing to consider that request. *Wilson* v. *Walker*, supra, 204 F.3d 35. At that hearing, the court ultimately denied the request, basing its ruling in part on Wilson's refusal "to answer questions that would permit [the court] to determine whether [his waiver of] his right to counsel . . . [was] a knowing, intelligent and voluntary waiver." (Internal quotation marks omitted.) Id.; see also id., 38 n.5. Although the Second Circuit did note, after a review of the record, that it believed the waiver was knowing, intelligent, and voluntary, it felt that the court's denial was not clear or final because it was based on Wilson's refusal to answer certain questions. See id., 38 and n.5. Further supporting that the trial court's ruling was not final was its express invitation to Wilson to reassert his request. See id., 36. Sometime after the initial hearing, defense counsel withdrew from the case, and a second attorney was appointed. Id. The newly appointed counsel reiterated to the court Wilson's earlier request to proceed pro se and asked for time to review that request with Wilson. Id. The court allowed counsel and Wilson one week to review Wilson's request to represent himself, and, thereafter, neither Wilson nor counsel reasserted Wilson's request for self-representation. Id. In fact, Wilson voiced no objection when a third attorney was appointed as substitute counsel for the second attorney despite the court's inquiry as to whether the appointment of this third attorney was "agreeable" to Wilson. (Internal quotation marks omitted.) Id.

As the preceding discussion illustrates, the Second

Circuit did not determine that the trial court had committed error and that the error was harmless. Instead, the Second Circuit held that there was no error because the trial court never clearly and conclusively denied Wilson's request to represent himself and Wilson subsequently waived his request by remaining silent in the face of the court's express invitation to reassert his right to self-representation. See id., 38. Moreover, it was likely important that nothing of substance occurred in the criminal proceedings between the initial denial of Wilson's request to represent himself and the invitation to renew his request for self-representation. Cf. *United States* v. *Tucker*, 451 F.3d 1176, 1178–79, 1183 (10th Cir. 2006) (reversing defendant's conviction when trial court denied request for self-representation prior to voir dire but reconsidered and granted such request immediately after voir dire was completed). Our reading of *Wilson* is supported by the Second Circuit's explicit statement that "a court's denial of the right to self-representation is not subject to harmless error analysis, and requires automatic reversal of a criminal conviction." *Wilson* v. *Walker*, supra, 204 F.3d 37. It is difficult to conceive of a reason why the court would make such a statement if it intended to apply a harmless error analysis.

Thus, *Pires* and *Wilson* stand for the proposition that, when a trial court has not clearly and conclusively denied a defendant's request to represent himself, the defendant may subsequently waive such a request. But, when a court has clearly and conclusively denied the request, the defendant does not waive his right to self-representation by subsequently acquiescing in being represented by counsel or by failing to reassert that right. See *State* v. *Jordan*, supra, 305 Conn. 20; see also *Williams* v. *Bartlett*, 44 F.3d 95, 101 (2d Cir. 1994) ("The court's ruling was categorical. . . . The defendant's acquiescence . . . cannot be read to signify waiver of a constitutionally protected right . . . ." [Citation omitted.]). In the present case, there was a clear and conclusive improper denial of the defendant's request to represent himself, which is structural error. Because the denial was clear and conclusive, the defendant's subsequent acquiescence in defense counsel's representation does not amount to waiver.[9]

The state suggests that, in this case, the trial court's decision, although clear, was not conclusive because the trial court informed "the defendant of [the court's] willingness to reconsider the issue." After reviewing the record, however, we conclude the denial was conclusive, despite the trial court's statement that it would reconsider the matter. In denying the defendant's request to represent himself, the court stated: "Well, here's what I'm going to do. . . . I'm not going to grant [the motion to remove counsel and to allow the defendant to proceed pro se] today. What I'm going to do is—I am going to take up with counsel the status of discovery later today. I'm going to make sure that we've

got a strict time schedule to get everything that can be gotten, directly to Attorney Aponte.

"He assures me it's going to be communicated to you. . . . [E]verything's going to be [given] to you, and we're not going to start this proceeding until May 26, a full four weeks away from today.

"If something comes up between now and then, that you have substitute counsel in and ready to go, [or if] an issue comes up with regard to discovery, I'm happy to hear it. I don't want to say no, because I don't know what's going to come up in the next four weeks.

"But, at this point, I'm not going to grant your motion. And I'm going to deny the motion for any continuance in [the] trial date at this time. *And I'm going to deny the motion to discharge counsel or allow you to proceed pro se.*

"If, in the next four weeks, I see some additional support for those, I'm happy to reconsider them, okay?" (Emphasis added.)

Although the trial court did invite the defendant to reassert his request to represent himself, we nonetheless conclude that the trial court's denial was conclusive. The court conditioned its willingness to reconsider its ruling on seeing "some additional support" for the motion. This is unlike the denial in *Wilson* that the Second Circuit determined was inconclusive. In *Wilson*, the trial court based its denial, in part, on Wilson's refusal to answer certain questions that would have allowed the court to determine whether the waiver of counsel was knowing and intelligent. See *Wilson* v. *Walker*, supra, 204 F.3d 35; see also id., 38 n.5. Further, after appointing new counsel, the trial court gave Wilson one week to confer with counsel regarding his motion to represent himself. Id., 36. On the basis of these circumstances, the Second Circuit concluded it was clear to both the court and Wilson that his motion to represent himself was still open for discussion. See id., 35, 38 and n.5. In the present case, however, the circumstances are different. The opportunity to have the court reconsider its decision did not depend on whether the defendant answered a few more questions, which was a possibility in *Wilson*. Instead, the trial court in the present case wanted to be presented with additional facts to support the defendant's request. Moreover, the additional support the court wanted was largely outside the control of the defendant. For example, whether the state complied with the discovery schedule and whether Aponte promptly provided the defendant with discovery materials were beyond the defendant's control. A defendant, faced with these circumstances, could reasonably believe that it would be futile to again request to proceed pro se. In *Williams*, the Second Circuit held that it was reasonable for a defendant to believe it would be fruitless to renew his

request to proceed pro se when it had been denied because of "the advanced stage of the proceedings and the defendant's lack of education . . . ." *Willaims* v. *Bartlett*, supra, 44 F.3d 101. The court reasoned that those were obstacles the defendant could not avoid prior to trial. Id. Likewise, in the present case, it would be reasonable for the defendant to believe he was not free to ask the court to reconsider his motion until there was "additional support . . . ."

Because we have determined that the trial court's denial of the defendant's request to represent himself was clear and conclusive, the defendant's subsequent conduct did not effect a waiver of his right to self-representation. We further conclude that the trial court's denial of the defendant's request was improper and that the improper denial of such a request is structural error.[10]

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] The defendant also filed two pro se motions for a speedy trial, one on March 1, 2010, and the other on April 23, 2010.

[2] The following is the relevant portion of the colloquy between the court and the defendant regarding the defendant's background:

"The Court: Sir, the issue is not the time. The issue is, tell me your background and your qualifications to represent yourself.

"The Defendant: My background is that, I got fourteen years of school, two years of law enforcement. And I wrote the basic motions I can file. I can do things like that. I also know about trials—a little bit about trials. I've been on one before.

"Other than that, I don't trust Mr. Aponte to this point. And, again, I will not sit in this courtroom. I will not—I will ask to leave. If I'm not—to get my motions in, or my discovery.

"I've been asking Mr. Aponte, and I wrote him letters. And he stated— he just stated in the court, and it's on the record. He just—

"The Court: Tell me about your two years in law enforcement. What did you do?

"The Defendant: I worked for—I worked for the—I worked on campus— [for] the campus police, arresting powers, and stuff like that. So, I have an understanding of the law. I do have an understanding of the law.

"The Court: Okay. Campus police, and where was that, sir?

"The Defendant: That's up in Western Connecticut State [University].

"The Court: Western Connecticut? And did you testify in any trials while you were with Western Connecticut State [University]?

"The Defendant: Yes, I have.

"The Court: How many would you say?

"The Defendant: Say three.

"The Court: Three trials?

"The Defendant: Also, one trial with the government. I went to trial in Pennsylvania—I went to trial. I'm capable of handling that.

"The Court: Have you ever represented yourself before?

"The Defendant: Yes, I have.

"The Court: And where's that?

"The Defendant: That's in Pennsylvania, sir.

"The Court: And what proceeding was that? Was that a state of Pennsylvania—a commonwealth of Pennsylvania versus—

"The Defendant: [Commonwealth] of Pennsylvania versus Velmon Braswell.

"The Court: And what kind of charge was that?

"The Defendant: [The] [c]harge was thrown out. I was acquitted on the charges.

"The Court: What was the charge?

"The Defendant: The charge was thrown out, sir. I don't have to even talk about that case.

"The Court: Well, I'm not—

"The Defendant: It's on my record. It's in my record. I don't talk about it.

"The Court: Okay.

"The Defendant: Those are the things I don't put—I don't have to defend

myself in that area in this court. That's—I have a right to sit there and watch my accused say that. I don't have to—

"The Court: Really, we're talking about a little different issue here.

"The Defendant: Yeah. I understand that, but I'm not putting—I'm not saying certain things.

"The Court: Okay. You choose not to. That's fine.

* * *

"The Court: Well, I have to tell you—any other credentials, experiences, qualifications, that you feel would make me comfortable in allowing you [to] represent yourself? This is a—these are serious charges.

"The Defendant: I understand that, Your Honor. And I'm asking the court for some time to get all the discovery sent to me in the jail. And I'll prepare my case within a month, without the help of Mr. Aponte.

"The Court: Well, here's what I'm going to do. I'm going to—I'm not going to grant that motion today."

[3] As the court attempted to canvass the defendant regarding his right to be present during jury selection, the defendant continuously interrupted the court. He also attempted to leave the courtroom as the court was addressing him.

[4] Practice Book § 44-3 provides: "A defendant shall be permitted to waive the right to counsel and shall be permitted to represent himself or herself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled;

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself;

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the dangers and disadvantages of self-representation."

[5] The defendant argues that the canvass was insufficient, and the state contends that the canvass substantially complied with the requirements of Practice Book § 44-3. A canvass is sufficient as long as it establishes that the defendant's waiver of counsel is knowing and intelligent. *State* v. *T.R.D.*, supra, 286 Conn. 204; *State* v. *D'Antonio*, supra, 274 Conn. 709. The trial court, however, did not base its ruling on whether the defendant's waiver was knowing and intelligent, and, therefore, we need not consider the adequacy of the canvass. Thus, we find the arguments regarding the adequacy of the canvass irrelevant.

[6] We note that, once a trial has begun, the quality of counsel is a proper factor for the trial court to consider in determining whether a defendant should be allowed to represent himself for the remainder of the trial. See *State* v. *Flanagan*, supra, 293 Conn. 431–32.

[7] In *Jordan*, the defendant, Victor L. Jordan, filed a pretrial motion to dismiss his counsel and orally asserted that he wished to represent himself. *State* v. *Jordan*, supra, 305 Conn. 15–16. "[T]he court summarily denied the motion to dismiss counsel on the basis that it was substantively unfounded"; id., 16; and the court did not address Jordan's request to represent himself. See id., 18. We concluded that, although the trial court's response would have been appropriate if Jordan had requested the appointment of new counsel, it was inadequate to address Jordan's request to represent himself. Id., 17.

[8] In *Pires* we did state that, "even if we were to assume that [defense counsel's] comments . . . amounted to a clear and unequivocal invocation of [Pires'] right to self-representation, [Pires] subsequently waived that right through his conduct following the appointment of [substitute counsel]." *State* v. *Pires*, supra, 310 Conn. 244–45. Perhaps this is why the state cites *Pires* in support of its contention that we have previously indicated that not every infringement of the right to self-representation is structural error. Nevertheless, we do not think this dictum changes the result. Even if Pires' request to represent himself had been clear and unequivocal, that would not have changed the fact that the court did not improperly deny his right to self-representation because it never ruled on his request. See id., 242. Although a defendant does not have to reassert his right to self-representation once it has been clearly denied by the court; *State* v. *Flanagan*, supra, 293 Conn. 426; we have never held that there is no obligation to renew such claim when the court does not address it. It seems to us that there is a significant difference between a defendant who waives or forfeits his right

to self-representation after a clear ruling and one who waives or forfeits the right when there has been no such ruling. In the former situation, it is likely that the waiver or forfeiture is precipitated by the denial. *State* v. *Jordan*, supra, 305 Conn. 20 ("the denial likely convinced [the] defendant [that] the self-representation option was simply unavailable, and [that] making the request again would be futile" [internal quotation marks omitted]). In the latter situation, contrarily, there has been no court action that would suggest that the reassertion of one's right would be futile. Because there was no ruling on Pires' unclear and equivocal request to proceed pro se, and because Pires failed to reassert such a request when given the opportunity, for example, when the court appointed substitute counsel, there was no error. We also note that nothing of substance happened in the criminal proceedings between the time of Pires' request to represent himself and the appointment of substitute counsel. See *State* v. *Pires*, supra, 226.

This does not mean, however, that, after a defendant's clear and unequivocal request to represent himself, a trial court may simply ignore such a request and proceed to a critical stage of the proceedings, and thereby avoid any error simply because it did not make a clear and conclusive ruling on the defendant's request. As we noted in part I of this opinion, once a defendant has clearly and unequivocally invoked his right to self-representation, the trial court is obligated to conduct a canvass in accordance with Practice Book § 44-3 to determine if his waiver of counsel is knowingly and intelligently made. Our decision in this case does not alter that obligation. Instead, it suggests there may be some instances in which a defendant asserts and subsequently waives his right to self-representation before a court clearly and conclusively rules on the defendant's request. In such instances, it is possible that there are circumstances in which the trial court's delay in ruling on the request would not constitute error.

[9] The state also argues that the defendant forfeited his right to self-representation through his behavior following the denial of his request. We do agree, and have so held, that a defendant may waive or forfeit his right to self-representation through disruptive behavior. E.g., *State* v. *Jones*, supra, 281 Conn. 648; *State* v. *Johnson*, supra, 185 Conn. 179. The behavior complained of in the present case, however, followed the court's improper and clear denial of the defendant's request to proceed pro se and therefore cannot effectuate a forfeiture of the defendant's right to self-representation. We note that it would have been a different case if the defendant's disruptive behavior followed the granting of his request for self-representation and the court subsequently appointed counsel to represent him. See, e.g., *Faretta* v. *California*, supra, 422 U.S. 834 n.46 ("the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct").

[10] Because we agree with the Appellate Court that the trial court's April 28, 2010 denial of the defendant's motion to represent himself was improper and that such impropriety is structural error, we do not reach the defendant's alternative ground for affirmance, namely, whether the trial court's denial of the defendant's July 20, July 27, and August 9, 2010 requests to represent himself were improper.

-----------------------------------------